George MONGEUR, Plaintiff-Appellant,

v.

Margaret HECKLER, Secretary of Health and Human Services, Defendant-Appellee.

No. 1433, Docket 83–6063.

United States Court of Appeals, Second Circuit.

Argued June 15, 1983.

Decided Nov. 22, 1983.

William R. Marks, Burlington, Vt., for plaintiff-appellant.

Kathleen N. Coleman, Asst. U.S. Atty., (George W.F. Cook, U.S. Atty., D. Vermont, Patti R. Page, Asst. U.S. Atty., Rutland, Vt., on brief), for defendant-appellee.

Before KEARSE and CARDAMONE, Circuit Judges, and BARTELS, District Judge.[*]

PER CURIAM:

George Mongeur appeals from a judgment of the United States District Court for the District of Vermont (Albert W. Coffrin, *District Judge*) which upheld a final determination of the Secretary of Health and Human Services ("Secretary") denying Mongeur's application for reinstatement of disability insurance benefits under the Social Security Act ("Act"), 42 U.S.C. § 405(g) (Supp. IV 1980). In an Opinion and Order, dated January 14, 1983, the district court found that there was substantial evidence supporting the decision of the Secretary that Mongeur's disability had ceased in October, 1979 and that the additional evidence Mongeur had submitted to

---

[*] Of the United States District Court for the Eastern District of New York, sitting by designation.

the district court did not qualify as "new" evidence that would justify a remand. We affirm.

## BACKGROUND

George Mongeur initially filed for social security disability benefits on December 12, 1977. At the time he was 45 years old, had completed the sixth grade and could barely read and write. His work history included employment for approximately 20 years as a carpenter and laborer in the construction industry and in a lumber mill and a two-year stretch in the Army where he had worked cleaning guns. When he applied for benefits Mongeur had not been working for about a year and was receiving outpatient care at the Veterans Administration Medical Clinic ("VA Clinic") where he had sought help because of fatigability, shortness of breath and exertional chest tightness. The medical personnel at the VA Clinic had diagnosed his condition as Class II anginal symptoms of chest pain and dyspnea.

The Social Security Administration ("SSA") denied his application for benefits, but Mongeur petitioned for and was afforded a hearing before an Administrative Law Judge ("ALJ"). The medical records submitted at that hearing document both a cardiac disorder and moderate obstructive airway disease. In an opinion dated October 25, 1978, the ALJ concluded that while the pulmonary problem was not disabling, the cardiac disorder was. He stated, however, that although he felt "constrained" to find that Mongeur could not work, he was unsure whether Mongeur's disability would be permanent, and he therefore recommended that Mongeur be reexamined within six months by a specialist in cardiac and pulmonary diseases. The basis for his doubt was a report by Dr. Christopher M. Terrien in which he had diagnosed Mongeur's heart condition as mild mitral insufficiency which would not be a disabling condition. The doctor, however, was unable to exclude the possibility that Mongeur might be suffering from angina pectoris, and if that indeed were the case, he opined that Mongeur should be restricted from isometric work and work involving the upper extremities. When presented with that medical restriction, the vocational expert who testified at the administrative hearing concluded that, given Mongeur's limited education, there were no occupations in the New England region that he could perform.

In January, 1980, SSA reevaluated Mongeur's condition and determined that his disability had ceased in October, 1979. Mongeur requested and was afforded an administrative hearing which was conducted by the same ALJ who had previously found Mongeur disabled. At that hearing the ALJ heard testimony from Mongeur, his wife and a vocational expert, and he considered medical reports from two practitioners of the VA Hospital, Dr. Arthur Sauvigne and Nurse Practitioner Elizabeth Laro, and from one consultative physician, Dr. Thomas B. Clairmont. The medical reports indicated that Mongeur's anginal chest pain pattern, which originally had caused the ALJ concern, was stable and mild; its symptoms could promptly be relieved by medication; and Mongeur no longer exhibited any signs of a significant cardiac condition. Mongeur's hypertension was also well controlled, and his moderate airway obstruction was responding to medication. The doctors' reports indicated that Mongeur's only significant remaining health problem was some difficulty in breathing, but both Dr. Sauvigne and Dr. Clairmont explained that this difficulty, probably the result of Mongeur's smoking, would continue as long as he continued to smoke. They concluded that Mongeur was not disabled. Dr. Sauvigne reported that he believed Mongeur's impairments did not meet the criteria for social security disability, and Dr. Clairmont concluded that Mongeur could manage to do work that did not require exertion and was not associated with dust fumes or chemicals that would interfere with his breathing. Nurse Laro implicitly disagreed with the doctors' prognosis, stating that in her opinion Mongeur suffered from both physical and mental impairments which would persist and progress during the rest of his life.

The vocational expert who testified at the hearing stated that, although Mongeur could not return to construction work, he

had skills, specifically his use of small tools and carpentry tools, that were transferrable to jobs which required less exertion and were performed in a clean environment. These jobs included being a circuit board worker, a hand stapler, jewelry maker, packager, bench assembler, machinery tester, ticket marker, heat sealer, and stamping machine operator. According to the vocational expert there were significant numbers of these jobs available in the local and national economies.

In the form he submitted to SSA requesting a second hearing, Mongeur reported that he had fainting spells. At the hearing he testified that he had no endurance, could not breathe, could not walk more than fifty yards and could not sit still or concentrate on anything for more than thirty minutes. He testified that the medication he received at the VA Hospital helped him, but he still was unable to do much of anything other than make soup for himself, watch t.v. and drive his car for short distances. Mongeur's wife testified that during his coughing spells, Mongeur occasionally fainted, and although he had begun passing out even before the first hearing, the fainting spells were now more frequent—they occurred about two to three times a week—and they lasted for longer periods of time. She reported that sometimes he stopped breathing when he fainted and that at those times she had to "whack" him to revive him.

In an opinion dated December 2, 1980, in which the ALJ concluded that Mongeur was no longer disabled, he stated:

The evidence in this case clearly supports a determination that the claimant's impairment has improved to the point where he is affected by what amounts to moderate chronic obstructive airways disease and he is no longer affected by any significant cardiac deficit except for an anginal syndrome which has been described as mild and which is well controlled with nitroglycerin. The claimant's hypertension also is well controlled with medications. The reports from the Veterans Administration Hospital show that the claimant is capable of at least sedentary work activity. The report of the consultative examiner also supports such a determination.

Monguer thereupon appealed to the SSA Appeals Council and submitted additional medical records: progress notes by Dr. Sauvigne dated January 23, 1981 and a letter from the Chief of Staff of the VA Medical Center. The substance of the additional progress notes was Dr. Sauvigne's new-found belief that Mongeur's long-term anxiety and depression might by symptoms of organic brain syndrome, a belief that resulted in his opinion that Mongeur was totally disabled. Despite Dr. Sauvigne's new diagnosis, the Appeals Council adopted the ALJ's decision. Mongeur then sought review in the district court, submitting still further documents to the court in the form of various medical progress notes and a medical report of Nurse Laro dated August 24, 1981, which had been adopted by Dr. Sauvigne. The crux of the new material was a definite diagnosis by Dr. Sauvigne and Nurse Laro that Mongeur was suffering from "organic brain syndrome," which, in their view, combined with Mongeur's other complications, rendered him totally disabled. In Nurse Laro's report she states in pertinent part:

As far as when the disease was first diagnosed, it was suspected by Dr. Sauvigne in January of 1981. However, I had been caring for George for some time before that and did not notice any great change in his affect or his mental status, but he has always appeared depressed, anxious and of low intellect and lacked understanding of his disease. I first started seeing George around 1977.... [T]his condition has been with George for an indeterminate number of years since even in 1977 he appeared basically the same.[1]

---

1. The report continues:
George went to the neurologist after neuropsych. testing.... Basically, the neurologist felt that he had diffuse dysfunction but he termed it as minimal according to exam and by comparing this with the neuropsych. testing. His interpretation meant that it was minimal as far as pursuing any further workup to determine the progressiveness of the disease but it did show the signs and symptoms of depression, anxiety and low intellect.

Finding there was substantial evidence to support the Secretary's decision and finding that the new materials were not "new evidence" within the meaning of the Act, the district court affirmed the Secretary's findings. This appeal followed.

## STATUTORY FRAMEWORK

In order to be entitled to social security disability benefits, a claimant's health must be so impaired as to prevent him from performing his previous job or any other substantial gainful work that exists in the economy. Thus 42 U.S.C. § 423(d)(2)(A) (1976) provides that

> an individual ... shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Once a claimant obtains benefits, those benefits last only so long as his disability continues. The Act further provides that entitlement to disability insurance benefits shall end with the close of the second month following the month in which such claimant's disability ceases. 42 U.S.C. § 423(a)(1) (1976). Disability ceases in whichever month is the earlier: the month in which the impairment, as established by current medical evidence is no longer disabling, or the month in which the individual

engages in substantial gainful activity. 20 C.F.R. § 404.1579(a).

It is well established that the burden of proving disability is on the claimant. 42 U.S.C. § 423(d)(5) (Supp. IV 1980); *Aubeuf v. Schweiker,* 649 F.2d 107, 111 (2d Cir.1981); *Dousewicz v. Harris,* 646 F.2d 771, 772 (2d Cir.1981). However, once the claimant has shown that his impairment prevents his return to his prior employment, he has established a prima facie case, and the burden shifts to the Secretary. The Secretary must then "produce evidence to show the existence of alternative substantial gainful work which exists in the national economy and which the claimant could perform, considering not only his physical capability, but as well his age, his education, his experience and his training." *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir. 1980). In assessing disability, the Secretary must make a thorough inquiry into the claimant's condition and must be mindful that "the Social Security Act is a remedial statute, to be broadly construed and liberally applied." *Gold v. Sec'y of H.E.W.,* 463 F.2d 38, 41 (2d Cir.1972) (quoting *Haberman v. Finch,* 418 F.2d 664, 667 (2d Cir.1969)). The facts that must be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience. *Miles v. Harris,* 645 F.2d 122, 124 (2d Cir.1981); *Parker v. Harris,* 626 F.2d at 231; *Rivera v. Harris,* 623 F.2d 212, 216 (2d Cir.1980); *Bastien v. Califano,* 572 F.2d 908, 912 (2d Cir.1978). The Secretary may give varying weight to the above factors, but the expert opinion of a claimant's treating physician is entitled to extra weight, *id.,* and in the absence of contradictory evidence, is conclusive. *Aubeuf v. Schweiker,* 649 F.2d at 112; *Hankerson v. Harris,* 636 F.2d 893, 896 (2d Cir. 1980).

I have also looked over the SSA requirements under the category of impairment, mental, and find that George does not suffer from any marked degree of impairment of memory, confusion or orientation. However, there is a mixed problem, again, of the depression, anxiety, impoverished slow thinking and low IQ, that prevent[s] him from being employed or trainable.

It is not the function of the reviewing court to try the case *de novo* but, assuming the Secretary has applied the correct legal standards, to decide whether the Secretary's decision is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3) (Supp. IV 1980); *Mathews v. Eldridge,* 424 U.S. 319, 339 n. 21, 96 S.Ct. 893, 904 n. 21, 47 L.Ed.2d 18 (1976); *Rutherford v. Schweiker,* 685 F.2d 60, 62 (2d Cir. 1982); *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982) (*per curiam*); *Schauer v. Schweiker,* 675 F.2d 55, 57 (2d Cir.1982). Substantial evidence is " 'more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn. 5 U.S.C. §§ 701 *et seq.; Gold v. Sec'y of H.E.W.,* 463 F.2d at 41; *Clark v. Weinberger,* 389 F.Supp. 1168, 1169 (D.Vt.1974), *aff'd,* 511 F.2d 1390 (2d Cir. 1975). In addition, the district court may remand the case for the taking of additional evidence upon a showing that there is new evidence which is material and that good cause exists for the failure to incorporate such evidence into the record in prior proceedings. 42 U.S.C. § 405(g) (Supp. IV 1980).

With these principles in mind we have reviewed the administrative record in detail and conclude that the district court properly refused to remand the case for the taking of new evidence. For purposes of clarity, we will address each of Mongeur's claims *seriatim.*

### NEW AND MATERIAL EVIDENCE

Mongeur argues that the district court erred in refusing to remand the case for the consideration of new and material evidence in the form of the diagnosis by Dr. Sauvigne and Nurse Laro that Mongeur is suffering from organic brain syndrome, which in combination with Mongeur's other complaints, renders him totally disabled. On June 9, 1980, Congress amended the original remand provision of 42 U.S.C. § 405(g) by providing conditions under which remand is deemed appropriate for the taking of additional evidence. A claimant must show that (i) the evidence is in fact new and material, and (ii) good cause exists for failure to produce that evidence in prior proceedings. 42 U.S.C. § 405(g) (Supp. IV 1980). The amendment was in part designed to limit federal court remands to the Secretary. See H.R.Rep. No. 96–408, 96th Cong., 2d Sess. 58059, *reprinted in* 1980 U.S.Code Cong. & Ad.News 1336–37; *Aubeuf v. Schweiker,* 649 F.2d at 115. Judge Coffrin recognized the proper scope of the amending provision and held that although Mongeur's condition had not previously been identified by specific medical terminology, it was not "new" evidence because the symptoms and effects of his condition had been present for some time. In fact, Nurse Laro, in the letter submitted to support the claim of new evidence, admits that the effects of the brain syndrome had been evident and had not changed for several years. Accordingly, the court correctly concluded that Mongeur had failed to meet the first prong of the test of "new and material" evidence, and remand for the taking of additional evidence was unwarranted.

### SUBSTANTIAL EVIDENCE

Mongeur also contends that the Secretary's decision to terminate benefits was not supported by substantial evidence because: First, it was based upon the facially incomplete report of a consultative physician which was contradicted by the opinion of Mongeur's treating physicians; second, the vocational expert did not take into account all of Mongeur's ailments; and, third, the ALJ failed to consider the testimony of Mongeur's wife that Mongeur faints two to three times per week. We disagree.

As to his first argument, Mongeur claims error in that the ALJ failed to give the expert opinion of "treating physi-

cians" the extra weight it should carry. *See Bastien v. Califano,* 572 F.2d 908. We are reluctant to accept the opinion of Dr. Sauvigne and Nurse Laro as that of treating physicians.[2] However, even were we to accept Mongeur's classification of them as his treating physicians, we would, nevertheless, conclude that the ALJ properly weighed the conflicting medical evidence. It is an accepted principle that the opinion of a treating physician is not binding if it is contradicted by substantial evidence, *Parker v. Harris,* 626 F.2d 225, and the report of a consultative physician may constitute such evidence. *Miles v. Harris,* 645 F.2d at 124; *Perez v. Secretary of HEW,* 622 F.2d 1 (1st Cir.1980). Here, the report of Dr. Clairmont indicates that Mongeur's cardiac condition is under control, and his only remaining difficulty of consequence is a breathing problem that is being aggravated and probably caused by Mongeur's smoking. Of course, a remediable impairment is not disabling. *Dumas v. Schweiker,* 712 F.2d 1545 (2d Cir.1983); *Ghazibayat v. Schweiker,* 554 F.Supp. 1005, 1011 (S.D.N.Y.1983); 20 C.F.R. § 404.1530 (1982). Thus, Dr. Clairmont's report constitutes evidence substantial and sufficient to contradict the opinion of Nurse Laro and the second opinion of Dr. Sauvigne. Moreover, it is not the only medical report that concludes that Mongeur is not disabled. In his initial report Dr. Sauvigne concurs that Mongeur's only remaining condition not being medically controlled is a breathing problem which is directly linked to his smoking.

Turning to the second contention, Mongeur argues that the ALJ's determination of disability was fatally flawed because the testimony by the vocational expert did not take into account all of Mongeur's ailments. The ALJ used the testimony of the vocational expert for a very limited purpose, that of discovering whether Mongeur had any transferable skills—given the assumption that he could do sedentary work. The separate finding that Mongeur's ailments did not preclude him from performing sedentary work was based on the medical reports, not the vocational testimony, so whether the vocational expert took into account all of Mongeur's ailments is immaterial.[3]

Mongeur's final contention is that the ALJ's failure to discuss Mrs. Mongeur's testimony as to Mongeur's fainting spells shows that the ALJ failed to consider that testimony. The district court rejected this contention, inferring from the other evidence in the record that the ALJ could have considered and simply discounted the wife's testimony. We agree with the district court.

The ALJ stated that "[a]ll of the testimony given at the hearing and the documents described in the List of Exhibits ... ha[d] been carefully considered," ALJ Decision of December 2, 1980, at 11, and that he had given "careful consideration [to] the entire record." *Id.* at 15. The record, aside from the testimony of Mongeur's wife (and possibly of Mongeur himself), contained no evidence that Mongeur had fainting spells. There was no mention of any complaints of such spells in any of Mongeur's doctors' reports. Nurse Laro, who had cared for

---

**2.** The opinion of a treating physician is accorded extra weight because the continuity of treatment he provides and the doctor/patient relationship he develops place him in a unique position to make a complete and accurate diagnosis of his patient. *Aubeuf v. Schweiker,* 649 F.2d 107, 118 (2d Cir.1981) (dissenting opinion); *Bastien v. Califano,* 572 F.2d 908 (2d Cir.1978). This was not the case with Dr. Sauvigne, who only examined Mongeur once or twice. Since he had not seen Mongeur regularly, he had not developed a physician/patient relationship with him, and his opinion is not entitled to the extra weight of that of a "treating physician." Inasmuch as Nurse Laro did treat Mongeur on a regular basis, her opinion is entitled to some extra consideration, but the diagnosis of a nurse practitioner should not be given the extra weight accorded a treating physician.

**3.** The ALJ, armed with all of his findings, including Mongeur's "maximum sustained work capacity, age, education and work experience," then properly applied the medical/vocational guidelines found in 20 C.F.R. § 404.1520 (1982) to reach the conclusion that Mongeur was not disabled. Recently the Supreme Court approved the use of these guidelines in determining disability. *Heckler v. Campbell,* —— U.S. ——, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

Mongeur regularly for several years, stated in her report that such spells could occur as described by the wife, but that Nurse Laro was not aware that Mongeur had had any such blackouts.[4] Thus, the record easily supports a conclusion that either the wife's testimony as to the fainting spells should be discounted, or that such spells as occurred, since they apparently were not sufficiently serious to be reported to any doctor or nurse, were not so serious as to impair Mongeur's ability to engage in substantial gainful employment.

Noting that there had been testimony that Mongeur had had fainting spells and that Nurse Laro's report stated specifically that she was unaware of any such spells, the district court stated that

> [t]he only reasonable conclusion is that the ALJ was aware of and did consider these claims. If plaintiff had indeed suffered such blackouts, it is reasonable to infer that he would have reported them to Nurse Laro in his medical histories and in his claims to the social security administration prior to the second hearing. Since he did not, the ALJ apparently discounted the claims.

January 14, 1983 Opinion at 18. We agree. It is quite clear that the ALJ considered the report of Nurse Laro in which she indicated that fainting spells had not been reported to her. He discussed that report in detail insofar as it described matters of which Nurse Laro was aware. ALJ Decision of December 2, 1980, at 5. The ALJ concluded, however, that Nurse Laro's report, with the other reports in the record, "without doubt, support[ed] a determination that the claimant ha[d] regained the residual functional capacity for perform [sic] at least sedentary work activity." Id. at 4.

When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive

or insufficient to lead him to a conclusion of disability. E.g., Berry v. Schweiker, 675 F.2d 464, 469 (2d Cir.1982). In Berry, we noted that, although we would remand for further findings or a clearer explanation where we could not fathom the ALJ's rationale "in relation to evidence in the record," we would not remand where "we were able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence." Id. See also Miles v. Harris, 645 F.2d 122, 124 (2d Cir.1981) ("Notwithstanding the apparent inconsistency between the reports of [two doctors], we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony . . . .").

Given the ALJ's statement that he had considered all of the evidence presented, and given the clear evidence in the record that Mongeur had never mentioned the alleged fainting spells to any of his doctors or nurses, we consider a remand unnecessary.

The judgment of the district court is affirmed.

BARTELS, Senior District Judge:

I respectfully dissent.

My dissent is limited to the majority's rejection of Mongeur's contention that the ALJ did not adequately consider his wife's testimony concerning his fainting spells.

Mongeur points out that the ALJ's silence shows that he failed to consider his wife's testimony. It is true that we do not require an ALJ "explicitly to reconcile every conflicting shred of medical testimony . . . ." Miles v. Harris, 645 F.2d 122, 124 (2d Cir. 1981). However, in reaching a conclusion he cannot fail to explain evidence of an important factor which is totally uncontradicted and which is basic to Mongeur's claim of disability. Cf. Aubeuf v. Schweiker, 649 F.2d 107, 112 (2d Cir.1981); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979). Where a factor is crucial it is not enough

---

**4.** The letter dated October 9, 1980 states in pertinent part:

> I was not aware of Mr. Mongeur's blackouts as described by his wife but these can occur

in severe shortness of breath which causes temporary hypoxia to the brain.

for the ALJ to state that he examined the entire record. He should also explain whether the evidence of a critical factor, although considered, was not believed or, under the circumstances, was insufficient for a finding of disability. Otherwise the reviewing court is left in the dark and is not in a position to determine whether there is substantial evidence to support his findings involving the factor critical to a disability claim. As this court stated in *Berry v. Schweiker,* 675 F.2d 464, 469 (2d Cir.1982) (*per curiam*):

> Cases may arise, however, in which we would be unable to fathom the ALJ's rationale in relation to evidence in the record, especially where credibility determinations and inference drawing is [sic] required of the ALJ. In such instances, we would not hesitate to remand the case for further findings or a clearer explanation for the decision.

This is such a case. Any finding by the ALJ that Mongeur did not suffer from fainting spells of a serious nature (or at all) must necessarily be implied and then we must guess whether his finding rested upon credibility assessment of the wife's testimony or upon an inference drawn from Nurse Laro's report. There is simply no other evidence in the record to sustain any such finding.

It is obvious that Mongeur's fainting spells were brought to the ALJ's attention, not only through the form filled out by Mongeur and the testimony of his wife but also through a letter written by Nurse Laro after the hearing but before the ALJ's decision. The evidence of his fainting is an important portion of the record in determining disability, for as Judge Coffrin states, "[o]bviously, a propensity to faint unexpectedly may well prevent plaintiff from engaging in any substantial gainful employment."

In his able opinion Judge Coffrin stated that the failure of Mongeur and his wife to mention the fainting spells to any medical personnel led him to conclude that the ALJ had considered the wife's testimony and had rejected her claims. But such an inference predicated on the ALJ's silence, does not necessarily follow and is, at best, specu-

lative. Because the fainting spells are so crucial and are not addressed elsewhere in the record, the ALJ should at least have specifically mentioned them. Assuming the ALJ did consider this important evidence, his consideration of it should not have been buried in a general statement that he had considered all the evidence. We should not be left to glean by inference from other portions of the record a crucial fact. Accordingly, I would hold that the purposes of the Act would best be served by reversing and remanding the case to the Secretary for the limited purpose of explicitly weighing, considering and deciding the effect, if any, of Mongeur's fainting spells upon his claim of disability.