**Santos RIVERA, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

**No. 83 Civ. 6401 (KTD).**

United States District Court,
S.D. New York.

May 24, 1984.

Irwin B. Silverman, Brooklyn, N.Y., for plaintiff.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for defendant; Stephen A. Dvorkin, Asst. U.S. Atty., New York City, of counsel.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Plaintiff, Santos Rivera, was born in Puerto Rico on October 10, 1948; that year his family moved to the continental United States. Transcript ("Tr.") at 19. He has a ninth grade education and has worked as a store clerk and security guard. Tr. at 19–21. Plaintiff was working as an undercover security guard when he was diagnosed as suffering from Von Recklinghausen's disease.[1]

In 1975, Rivera applied for disability insurance benefits and was found to be disabled effective February 28, 1975. Tr. 8. He has been receiving benefits and has not worked since that date. In a letter dated July 7, 1982, the New York State Department of Social Services informed Rivera that it was assisting the Social Security Administration in an accelerated Continuing Disability Interview ("CDI") process and was therefore reviewing the eligibility of recipients of benefits under the Social Security Act. Tr. 35. The Disability Specialist stated in the letter that a determination had been made that Rivera was able to "engage in substantial gainful activity in 7/82." Id. Accordingly, his disability benefits were to be terminated as of September 1982. The determination was stated to have been made on the basis of medical reports submitted by Dr. Joseph Polifrone (dated May 11, 1982) and Dr. A. Hyman Kirshenbaum (dated March 18, 1982). Id. Furthermore, the disability specialist stated that although Rivera could not perform many jobs, he could perform sedentary work. Id. A formal determination by the Social Security Administration was made on August 9, 1982. Tr. 36. In February of 1983, Rivera's request for reconsideration was denied and the reviewer concluded that the medical evidence demonstrated muscle weakness and that Rivera's condition had stabilized since it was treated. Tr. 41.

Rivera requested a hearing on February 18, 1983. Tr. 47. A short hearing before an Administrative Law Judge ("ALJ") was held on April 11, 1983 at which Rivera testified. On April 29, 1983 the ALJ upheld the termination of Rivera's benefits. The Appeals Council denied review of the ALJ's decision and the decision thereby became the final decision of the Secretary of Health and Human Services. Tr. 2.

### A. Medical Evidence

In a neurological report dated January 7, 1982, plaintiff's treating physician, Dr. Kir-

---

1. Von Recklinghausen's disease or neurofibromatosis is a "familial condition characterized by developmental changes in the nervous system, muscles, bones and skin and marked superficially by the formation of multiple pedunculat-

ed soft tumors (neurofibromas) distributed over the entire body associated with areas of pigmentation." Dorland's Illustrated Medical Dictionary 1005 (24 ed. 1965).

shenbaum diagnosed Rivera's disease as multiple neurofibromas or Von Recklinghausen's disease. Tr. at 57. The report states that on February 19, 1972, plaintiff underwent a "laminectomy of C2, 3, 4 and part of C1 and part of C5, for removal of multiple neurofribromas." *Id.* Dr. Kirshenbaum reported that although the tumors were successfully removed, plaintiff's condition became progressively worse. Rivera was readmitted to Beth Israel Hospital where a myelogram was performed on January 13, 1978. The test revealed a large lesion at the C5, 6 level. *Id.* On January 18, 1978, Dr. Kirshenbaum performed a "lower cervical laminectomy" to remove the "intradural extrameduallary tumor." *Id.* Plaintiff was finally discharged from the hospital on February 25, 1978. In his January 7, 1982 report, Dr. Kirshenbaum states that Rivera visited his office for periodic examinations. During the course of his treatment, a second myelogram was performed which revealed "two to three dozen intradural lesions in the cervical, thoracic and lumbasacral areas." *Id.* Dr. Kirshenbaum indicated that if Rivera's "sciatica progresses," the lesions would also have to be removed. In addition, the report states that plaintiff was readmitted to Beth Israel Hospital between September 25, 1979 and October 2, 1979. Finally, Dr. Kirshenbaum noted that plaintiff walks with a "spastic gait" and has weakness in the upper extremities. Plaintiff last visited Dr. Kirshenbaum on August 20, 1981 and complained of pain in the left hip which caused him to sway and loose his balance when he walked. *Id.* The report states that Rivera tires easily, drops objects from his left hand, and is unable to go up and down stairs. *Id.* In a letter dated July 20, 1982, Dr. Kirshenbaum reviewed plaintiff's medical history and concluded that Rivera's physical condition renders him totally disabled. Tr. 62.

In November 1982, Dr. Kirshenbaum completed a Spinal Disorders Medical Report and a Neurological Medical Report. The spinal report included a description of plaintiff's symptoms and treatment consistent with his earlier reports of January and July 1982. Tr. at 63. Dr. Kirshenbaum also included the results of a tendon reflex test; Rivera registered "200" on the "dynamometer" with his right hand, but only measured "20" with his left hand. *Id.*

In addition to the reports submitted by Rivera's treating physician, the record includes two medical reports completed by consulting physicians. The first, completed by Dr. Joseph C. Polifrone on May 11, 1982, concludes that Rivera suffers from weakness in the left extremities, poor equilibrium, and atrophy in the left hand, arm and leg muscles. Tr. 61. Dr. Polifrone found Rivera to be of normal mental ability and indicated that he believed that plaintiff's condition was permanent and would continue to prevent him from performing fine manipulations with his left hand. *Id.* Dr. Polifrone concluded, however, that "there are many types of work that [plaintiff] would be able to do." *Id.*

Dr. Rubenstein performed a second consultative examination on January 4, 1983. Dr. Rubenstein's report includes a discussion of plaintiff's past medical history as well as the results of his own physical and neurological examinations. Dr. Rubenstein indicated that plaintiff has multiple "cafe-au-lait" spots, or skin lesions, in addition to "multiple dermal neurofibromas." Tr. at 67. A neurological examination found plaintiff's mental abilities, cranial nerves, and sensory perceptions intact. Tr. at 68. A motor examination revealed that plaintiff has no atrophy, and that the tone and strength in his arms and hands are intact. *Id.* Dr. Rubenstein found moderately increased tone in the legs. *Id.* In addition, Dr. Rubenstein found that plaintiff has normal finger to nose coordination, but he indicated that plaintiff walks with a spastic gait. *Id.* Dr. Rubenstein's conclusion was that Rivera suffers from "disseminated neuro fibromatosis" and "mild spastic paraparesis secondary to cervical and perhaps thoracic neuro fibromas." *Id.* He also recognized that plaintiff may need further surgery if his condition progressed. *Id.*

Finally, plaintiff's current treating physician, Dr. David Rosenberg, completed a

Social Security Administration medical report on April 8, 1983, in which he identified plaintiff's disease as "neuro fibromas." On each page of the report, Dr. Rosenberg scrawled the words "totally disabled." Tr. 70–73. Dr. Rosenberg prescribed clinoril and recommended that he take Bufferin, both to relieve his pain and stiffness in the hip joints. Tr. at 75.

At the April 11, 1983 hearing, Rivera testified that his condition renders him totally disabled and prevents him from working. Tr. at 24. He indicated that he experiences pain in the left arm, hip and leg when it is damp. *Id.* Plaintiff testified further that he can sit for one-half hour, stand for twenty minutes and walk about a block and a half before becoming fatigued. *Id.* In addition, plaintiff stated that he can only lift three pounds, and that he becomes dizzy when he bends to pick up something. Tr. at 26–27.

Plaintiff also testified that his daily activities are generally limited to sleeping, eating, and watching television. Tr. at 30. He stated also that he occasionally helps his wife with the house work, and that he attends church on Sunday. Tr. at 29. In addition, he testified that he occasionally takes his son to a nearby park. *Id.* Finally, plaintiff testified that he did not like to go walking because he is afraid that somebody will mistake his lack of coordination and imbalance as manifestations of drug or alcohol abuse. Tr. at 32.

The ALJ found that Rivera suffers from severe Von Recklinghausen's disease, but stated that Rivera did not establish that he suffers from an impairment listed in Appendix 1 of the regulations. Tr. 8 (¶ 2). Thus, he found that Rivera has the residual functional capacity to perform work related functions, excluding work involving extensive periods of standing and walking, or requiring the ability to lift more than a few pounds. *Id.* (¶ 4). The ALJ found, therefore, that Rivera's condition did not prevent him from performing his past relevant work as a security guard. *Id.* (¶¶ 5, 6).

Rivera seeks reversal of the Secretary's decision to terminate his entitlement to disability benefits and the reinstatement of those benefits. For the reasons that follow, plaintiff's motion is granted.

## DISCUSSION

My function in reviewing the Secretary's final decision is not to try the case *de novo*, but to determine whether the Secretary's findings are supported by substantial evidence. 42 U.S.C. § 405(g), 1383(c)(3); *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir.1983). Substantial evidence is defined as " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)).

The Secretary will find a claimant to be disabled if his impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work ...." 42 U.S.C. § 423(d)(2)(A). I find that the Secretary's decision that Rivera is able to perform his previous work is not supported by substantial evidence.

### A. *Standard for Termination*

I note preliminarily that Congress has authorized the suspension of disability insurance benefits where the Secretary has determined that a claimant's disability has ceased. 42 U.S.C. § 425. Under the regulations, an individual is no longer disabled when his impairment's severity does not prevent him from engaging in any substantial gainful employment. 20 C.F.R. § 404.-1594. A claimant has the burden of proving that he suffers from a disability. *See Carroll v. Secretary of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983). In a termination case such as this, however, where the claimant has been receiving benefits for over eight years pursuant to a prior determination by the Secretary, it is unreasonable and illogical to place the claimant whose eligibility is being reviewed on the same level as the claimant who is making an initial application for disability benefits.

A majority of circuits have held that a decision by the Secretary to terminate benefits must be supported by substantial evidence that the claimant's condition has improved or that the prior determination was clearly erroneous. *See, e.g., Miranda v. Secretary of Health, Education & Welfare,* 514 F.2d 996, 998 (1st Cir.1975); *Kuzmin v. Schweiker,* 714 F.2d 1233, 1237 (3d Cir.1983) (once the claimant introduces evidence that his or her condition has not changed, a presumption of continuing disability arises); *Hayes v. Secretary of Health, Education & Welfare,* 656 F.2d 204, 206 (6th Cir.1981) (no substantial evidence of improvement shown to support cessation of benefits); *Cassiday v. Schweiker,* 663 F.2d 745, 746–47 (7th Cir. 1981) (adopting *Miranda* analysis); *Weber v. Harris,* 640 F.2d 176, 178 (8th Cir.1981) (evidence to support finding of medical improvement required); *Simpson v. Schweiker,* 691 F.2d 966, 969 (11th Cir.1982) (administrative *res judicata* requires the continuation of benefits if evidence is substantially the same as it was at the time of the earlier determination); *see also Trujillo v. Heckler,* 569 F.Supp. 631 (D.Colo.1983); *Brissette v. Schweiker,* 566 F.Supp. 626 (D.Mo. 1983).

The Second Circuit has recently ruled on the subject of the medical improvement test. *See DeLeon v. Secretary of Health and Human Services,* 734 F.2d 930, 936–937 (2d Cir.1984). The court in *DeLeon* stated that "[b]ecause [it] agree[d] that benefits may not be terminated 'simply on the whim of a changed ALJ,' ... the Secretary must apply the medical improvement standard in deciding whether to terminate benefits to an individual previously found to be disabled." *Id.* at 937.

■ Here, the ALJ prefaced his findings of fact by stating that "[i]t is not necessary for the claimant's impairment(s) to have improved for the disability to be ceased." Tr. 6. Nevertheless, he concluded that "[r]ecent medical findings establish ... a steady improvement in the symptomatology in that as of January 4, 1983 cranial nerves, muscle strength, fine coor-

dination and sensory evaluation were intact and no signs of atrophy were present." Tr. 8. The ALJ failed, however, to elaborate as to what evidence was being compared in order to reach his conclusion that Rivera's condition had improved. I find therefore that the ALJ did not apply the medical improvement standard and any comparison that he did make was inadequate and does not substantially support a finding of improvement. Furthermore, I conclude in any case that the ALJ's finding that Rivera presently has the residual functional capacity to perform his prior work is not supported by substantial evidence. I find also that the ALJ failed to accord sufficient weight to the opinion of Rivera's treating physician of over eight years, Dr. Kirshenbaum. In addition, the ALJ failed to properly apply the regulations as they currently exist.

## B. *Substantial Evidence*

■ In ascertaining the claimant's physical work ability, the Secretary "must consider objective medical facts, diagnoses and medical opinions based on such facts and subjective evidence of pain or disability testified to by the claimant or others." *Ferraris v. Heckler,* 728 F.2d 582, 585 (2d Cir.1984) (citations omitted). In particular, the Secretary is "required to give considerable—and if uncontradicted, conclusive—weight to the expert opinions of the claimant's own treating physicians." *Id.* (citations omitted). *See also Bastien v. Califano,* 572 F.2d 908, 912 (2d Cir.1978) (opinion of treating physician should be accorded extra weight because of continuity of treatment). Dr. Kirshenbaum concluded that plaintiff was totally disabled due to the symptoms associated with Von Recklinghausen's disease. The consulting physician, Dr. Polifrone found that Rivera suffered from Von Recklinghausen's disease, concluded that "[t]hese neurological findings are probably permanent and patient probably is limited in what he can do, but [stated that] I am sure that there are many types of work that he would be able to do."

Rivera's treating physicians as well as Dr. Rubenstein, another consultative physician, have diagnosed his disease as neurofibromatosis and believe that future surgery to remove the tumors may be necessary. Thus, it is essentially undisputed that Rivera has Von Reckinghausen's disease and that future operations may be necessary to remove the tumors. Moreover, the voluminous medical records from Beth Israel Medical Center, reports by Dr. Kirshenbaum and Dr. David Rosenberg, and reports prepared by the two consultative physicians, establish that plaintiff's physical manifestations of this disease include stiffness on his left side, a "spastic gait" in his walk, and a loss of balance. Tr. 76–86, 57–60, 62, 70–73, 61, 67–68. Furthermore, Rivera testified that he weighed 106 pounds rather than the approximate 125 pounds that he weighed prior to his illness. Tr. 19. The evidence presented to the ALJ also indicates a history of repeated visits to Beth Israel Medical Center for laminectomys to remove the tumors and myelograms to identify new growths. Tr. 70–73. The ALJ did not discuss and appears to have disregarded Rivera's testimony that he could sit for a half an hour, stand for fifteen to twenty minutes, walk a block and one-half before getting tired, lift no more than three pounds and climb only six or seven steps. Tr. 26–27. Furthermore, Rivera testified that his left hand stiffens, Tr. 27, and he suffers from pain in his left hip, arm and leg. Tr. 25.

Accordingly, I conclude that the Secretary's determination that the plaintiff possesses the residual functional capacity to perform his prior jobs as a clerk or undercover security guard is not supported by substantial evidence.

## C. *ALJ's Application of Regulations*

█ There exists an additional reason to reverse the Secretary's decision. The Secretary has promulgated a regulation under which the ALJ evaluates the evidence presented by the claimant in a sequential manner. 20 C.F.R. § 404.1520. The regulation has been summarized as follows:

First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, *the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.* Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.1982) (emphasis supplied).

The ALJ states in his opinion that Rivera had the residual functional capacity to perform his prior work. Thus, applying the sequential regulation which the ALJ summarizes in the beginning of his analysis, the ALJ must have found first that Rivera has a "severe impairment." The ALJ noted specifically that the claimant's impairment was not listed in the appendix to the regulation (step three). He therefore proceeded to the fourth inquiry and concluded that the claimant had the residual functional capacity to perform his past work as a security guard.

The ALJ did not indicate that he analyzed the claimant's impairment in terms of the neurological impairments listed in 20 C.F.R. § 404.1520, Appendix I, §§ 11.00, et seq. The ALJ's attention is specifically directed to sections 11.00(C), 11.04(B), and

850

11.08. Section 11.08 lists *"spinal cord or nerve root lesions, due to any cause* with disorganization of motor function as described as described in 11.04B." The impairments listed in section 11 of Appendix I appear to include Rivera's condition. If the ALJ considered the list, it was incumbent on him to articulate his reason for concluding that Rivera's condition is not among the impairments listed. *See Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983).

## CONCLUSION

The ALJ improperly applied the sequential regulation in failing to consider adequately whether plaintiff's condition is a "listed impairment." Furthermore, the ALJ failed to consider Rivera's case under the medical improvement standard. Finally, the Secretary's decision that Rivera has the residual functional capacity to perform his prior work is not supported by substantial evidence. Accordingly, plaintiff's motion is granted and the Secretary's decision is reversed. A remand is unnecessary; the Secretary may commence new proceedings to terminate Rivera's benefits at any time under 42 U.S.C. § 425. Rivera's benefits are reinstated retroactive to September 1982.

Judgment shall be entered accordingly.

SO ORDERED.