Fernando MONTEIRO, Plaintiff,

v.

Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.

No. 84 Civ. 1101 (SWK).

United States District Court, S.D. New York.

July 24, 1986.

Freedman, Wray, Wagner, Tabakman and Weiss by Lewis B. Insler, New York City, for plaintiff.

Rudolph W. Giuliani, U.S. Atty., S.D.N.Y. by Rosemarie E. Matera, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

This case is before the Court on the parties' cross-motions for judgment on the pleadings. Fed.R.Civ.P. 12(c). Plaintiff Fernando Monteiro seeks a reversal of the Secretary's decision denying his application for Social Security Disability Insurance Benefits (DI). 42 U.S.C. § 423. The Secretary moves for affirmance, claiming the decision that plaintiff was capable of light work and thus not disabled is supported by substantial evidence.

## LEGAL FRAMEWORK

A court's role in reviewing a finding a disability is limited to an assessment of whether the Secretary's findings are supported by substantial evidence. *Rivera v. Harris*, 623 F.2d 212 (2d Cir.1980). If so, the finding is conclusive. 42 U.S.C. § 405(g). "Substantial evidence" means more than a mere scintilla, it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Schauer v. Schweiker*, 675 F.2d 55 (2d Cir.1982).

An individual is disabled if he suffers from an impairment which prevents him from engaging in his previous work or any work in the national economy and which is expected to last for at least twelve months. 42 U.S.C. § 423(d).

The claimant bears the initial burden of showing that his impairment prevents him from returning to his prior type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.1982). If the claimant meets this burden, the burden then shifts to the Secretary to prove the existence of alternative gainful employment which exists in the national economy and which the claimant could perform, considering his mental and physical capabilities, age, education, experience, and training. *Id.*

The Secretary has incorporated this burden of proof in a five step process to be utilized in evaluating disability claims. 20 C.F.R. § 404.1520. First, if the Secretary finds that the applicant is engaged in substantial gainful activity, a finding of not disabled is required. Second, the Secretary determines whether the applicant has a severe impairment.[1] Third, if the claimant has a severe impairment, the Secretary must decide, based on medical evidence

---

1. In *Dixon v. New York*, 785 F.2d 1102 (2d Cir.1986), the Second Circuit affirmed a preliminary injunction which prohibited the Secretary from denying or terminating disability benefits on the basis of the "severity regulations" set forth, *inter alia*, in 20 C.F.R. § 404.1520(c). The continued legality of the use of the second step of the process, which is based on the severity regulations, is thus in question. Since the ALJ found that Monteiro did suffer from a severe impairment, step two of the process is not at issue in this case.

alone, whether the applicant has an impairment which is listed in Appendix 1 of the regulations. If he does, he is disabled. Fourth, if the claimant does not have a listed impairment the Secretary determines whether the applicant has the residual functional capacity to do his past work. Fifth, if he does not, the Secretary then determines whether, based on the applicant's residual functional capacity, age, education, and past work experience, he can do any other work. If he can, the Secretary will find him not disabled.

## THE DECISION BELOW

In the present case, the Administrative Law Judge (ALJ) found that Monteiro was not working, suffered from a severe, non-listed impairment, and could not perform his previous work. The ALJ found, based on the "negative clinical findings and claimant's account of his daily activities", "that the claimant is able to sit and stand alternatively in an eight-hour work day, walk short distances, and lift and carry up 20 pounds...." and thus "retains the functional capacity for light work." (R. 16) The ALJ also stated that Monteiro "testified that he drives, shops with his wife, and takes care of his personal needs." (R. 16) Under a section marked "Findings" the ALJ found that "[a]lthough claimant continues to suffer from leg pain, the evidence shows that such pain is caused by excessive ambulation and that light work could be performed ...", and that "[t]he claimant has the residual functional capacity to perform the physical exertion requirements of work except for prolonged walking and lifting and carrying more than 20 pounds...." (R. 16–17) The ALJ then applied 20 C.F.R. Pt. 404, Subpt. P, App. 2 (the grids) to Monteiro, and found that Monteiro was not disabled.

Monteiro challenges the ALJ's finding that he had the residual functional capacity to engage in light work. Monteiro claims

he retained only the capacity to perform sedentary work and based on his age, work experience, and education, application of the grids requires a finding of disability. Monteiro returned to work on September 6, 1983, so he claims he is entitled to benefits from September 3, 1982 until then.[2]

## PERSONAL HISTORY

Monteiro was born in Portugal on July 2, 1934. (R. 44) He attended school for four years in Portugal, and has received no other vocational or job training. (R. 27) Monteiro came to the United States in 1970, and does not speak, read, or write English. (R. 23, 28) He cannot read or write Portuguese either. (R. 28)

Monteiro's only work experience has been as a gardener. (R. 48) He has held a number of landscaping jobs while in the United States, most recently at a cemetery. His responsibilities at the cemetery included trimming bushes, raking leaves, and digging graves. (R. 29)

Monteiro was injured in 1973. While at work, a truck he was in crashed into a brick wall, (R. 39, 94) fracturing Monteiro's left ankle. (R. 94) Monteiro suffered complications, including a fractured left hip in 1976, and underwent surgery five times between 1973 and 1982. (R. 91, 94)

Monteiro left his landscaping job on September 3, 1982. (R. 7, 25, 29) He claims the pain in his leg was so great it prohibited him from working. (R. 30)

## DAILY ACTIVITIES

At the hearing before the ALJ, Monteiro testified that he feels pain all over his left leg. (R. 30) He stated that he can sit for thirty minutes or stand still for ten minutes before the pain in his leg forces him to move. (R. 32) Monteiro walks with a limp, uses a cane, and can walk for a half mile before he must stop. (R. 32)

---

**2.** The fact that Monteiro returned to work is not part of the record in this case, and was not before the ALJ. Apparently, Monteiro underwent surgery in the summer of 1983 and after his hearing which cured his disability. Nothing in the record indicates that the surgery was thought likely to cure his disability.

Monteiro testified that his daily activities are limited. He generally stays home during the day and watches television, naps, or goes outside. (R. 34) He has a garden but cannot tend to it because of his pain. (R. 34) He belongs to a club but does not attend meetings anymore due to his pain. (R. 34) Monteiro has a tenant on the second floor of his home, but does not do repair work for him because of his pain. (R. 34) Monteiro's wife cooks for him, and Monteiro can drive, but only with his right arm and right leg. (R. 31) He drives his wife to the store once a week but waits in the car for her while she shops. (R. 35)

## MEDICAL EVIDENCE

In a report dated December 17, 1982, Dr. Elio Ippolito, who has been Monteiro's treating physician since 1970, (R. 50) diagnosed Monteiro as suffering from "stasis ulcer of the left ankle secondary to a fractured left hip and fused of the left ankle for peroneal nerve injury of the left ankle." (R. 91) Ippolito reported that Monteiro could walk with the assistance of a cane, and that he suffered from two significant functional limitations: pain upon excessive ambulation and inability to bend the left foot. (R. 91)

In a report to Monteiro's counsel dated February 3, 1983, Ippolito stated that based on Monteiro's medical condition, "he could be retrained for sedentary employment but may not resume his usual employment in anyway whatsoever." (R. 102)

Finally, Ippolito examined Monteiro on April 25, 1983. He stated Monteiro "has pain on ambulation" and there was "no way he may return to his usual employment or to any gainful employment that he is able to handle. He therefore should be considered permanently disabled for social security benefits." (R. 106) Ippolito's assessment of Monteiro's capacity to perform work related activities concluded that Monteiro could sit for short periods of time, could not lift, bend, push, pull or carry, could not stand for any length of time, walked with a limp, and used a cane.

Dr. Trevelyon Palmer examined Monteiro on January 13, 1983 in connection with Monteiro's worker's compensation claim. He said that "the patient should elevate the left leg as much as possible when he is in the supine position and keep sitting and standing to a minimum...." (R. 95) Palmer was unable to evaluate whether Monteiro could ever resume his regular work or work of any kind, stating that the reader should consult Dr. Ippolito's report for that evaluation. (R. 96)

Dr. Jay Winokur examined Monteiro on June 14, 1983. He said, "The patient has a marked disability at this time, but should be capable of doing some light work." (R. 122)

Finally a report by an unnamed physician, apparently made in conjunction with Monteiro's disability determination report, states that Monteiro can lift a maximum of 50 pounds, frequently lift 25 pounds, can stand and/or walk a total of six hours per eight hours a day, and can sit approximately six hours per day. The report states that Monteiro's ability to push and pull is limited, but does not describe the degree of limitation. The report also says Monteiro cannot bend his left foot and cannot walk great distances.

## DISCUSSION

The issue in this case is whether the ALJ's finding that Monteiro could perform light work is supported by substantial evidence. The applicable regulations define light work as requiring lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds, and a good deal of walking, standing, or sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404, 1567(b).

In determining whether the ALJ's finding is supported by substantial evidence, the Court first turns to the medical opinion of Monteiro's treating physician, Dr. Ippolito. The "treating physician" rule in this circuit is that a treating physician's opinion on the subject of medical disability is binding on the factfinder unless contra-

dicted by substantial evidence. If contradicted by substantial evidence, it is entitled to some extra weight, although resolution of genuine conflicts between the opinion of the treating physician with its extra weight and any substantial evidence to the contrary remains the responsibility of the factfinder. *Schisler v. Heckler,* 787 F.2d 76, 81 (2d Cir.1986). *See Ferraris v. Heckler,* 728 F.2d 582, 585 (2d Cir.1984); *Mongeur v. Heckler,* 722 F.2d 1033, 1037 (2d Cir. 1983). The report of a consulting physician may constitute substantial evidence. *Mongeur,* 722 F.2d at 1039.

█ Ippolito's three reports indicate that Monteiro could not do light work. The Secretary argues that Ippolito's April 25th report that Monteiro was permanently disabled was not based on any new evidence, and was revised from an earlier diagnosis to assist Monteiro on obtaining benefits. The April 25th report, however, was based on an extensive review of Monteiro's job-related capacities. (R. 107–108) Furthermore, even if the court ignores the portion of the report which states that Monteiro should be considered disabled for the purposes of disability benefits, the report concludes that Monteiro can do only sedentary work. Hence, the April 25th report is consistent with, and does not detract from, the credibility of the February 3rd report in which Ippolito stated that Monteiro could do only sedentary work.

Dr. Trevelyon Palmer, who also examined Monteiro, concluded that Monteiro should keep sitting and standing to a minimum. Palmer was unable to evaluate Monteiro's employment capabilities, stating only that such information was available in Dr. Ippolito's report. This opinion neither contradicts Ippolito's opinion nor provides substantial evidence for the ALJ's finding of no disability.

In dispute with Ippolito's finding is, first, the report of Dr. Jay Winokur. His report, which found that Monteiro had a marked disability but should be capable of doing some light work does not, with any certainty, express an opinion about Monteiro's functional capacity and agrees that he has a marked disability. It thus does not create a genuine conflict with Ippolito's opinion and is not substantial evidence.

The ALJ apparently relied heavily on the report by the unnamed physician. (R. 51) This report, however, does not create a genuine conflict with Ippolito's report and is not substantial evidence in contradiction of the report. The report by the unnamed physician does not give a diagnosis, nor does it describe the clinical basis for the judgments of functional limitation or capacity, nor does it cite any other medical evidence or diagnostic test the doctor used in making his assessment.

The ALJ's findings about Monteiro's daily activities are also not supported by substantial evidence. The ALJ's finding that Monteiro shops, drives, and takes care of his personal needs misconstrues Monteiro's uncontradicted testimony. Monteiro is able to drive, but can only use his right foot and arm. He does not shop with his wife, he only drives her to the store and waits for her in the parking lot while she shops. Monteiro also does not cook or clean. Monteiro also testified that he can walk, sit, and stand for only short periods of time.

Based on the Court's review of the record, there is no substantial evidence to support the ALJ's finding that Monteiro is able to perform light work. The ALJ misconstrued the testimony of Monteiro and ignored the opinion of Dr. Ippolito, Monteiro's treating physician. The ALJ relied on the undocumented findings of an unnamed doctor apparently retained by the Secretary to evaluate Monteiro's disability. Such an opinion cannot be treated as substantial evidence and does not create a conflict with Dr. Ippolito's report. There is thus no substantial evidence that Monteiro can perform three tasks required for light work: lifting a maximum of twenty pounds, frequently lifting up to ten pounds, and performing a good deal of walking, standing, or sitting. *See Rivers v. Heckler,* 577 F.Supp. 766, 770 (S.D.N.Y.1984).

█ The only remaining issue is the appropriate remedy. In this case, the claim-

ant successfully bore his initial burden of proving disability. The burden then shifted to the Secretary to show that there is work in the economy that he could perform. *See Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982). Since the court finds that the Secretary failed to satisfy her burden, reversal of the Secretary's finding of no disability is appropriate. *See Rivers,* 577 F.Supp. at 771–72.

Monteiro concedes he has the capacity to perform sedentary work. Using the same vocational factors as the ALJ (see R. 16) and applying the sedentary work grid to Monteiro, the Court finds that Monteiro is disabled. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.17. This case is thus reversed and remanded for a calculation of benefits owing to Monteiro.

SO ORDERED.