Terrianne OTTS, Plaintiff–Appellant,

v.

**COMMISSIONER OF SOCIAL SECURITY, Defendant–Appellee.**

No. 06–4529–cv.

United States Court of Appeals, Second Circuit.

Oct. 5, 2007.

Howard D. Olinsky, Olinsky & Shurtliff, LLP, Syracuse, NY, for Appellant.

Karen G. Fiszer, Special Assistant United States Attorney, United States Department of Justice, Social Security Administration, Office of the General Counsel, for Glenn T. Suddaby, United States Attorney, Northern District of New York, Syracuse, NY, for Appellee.

PRESENT: Honorable JOSEPH M. McLAUGHLIN, Honorable REENA RAGGI, Circuit Judges, Honorable EDWARD R. KORMAN, District Judge.[1]

## SUMMARY ORDER

Plaintiff Terrianne Otts appeals from a judgment of the district court upholding a final determination by the Commissioner of Social Security ("Commissioner") denying Otts's application for Social Security Disability Insurance ("SSDI") for the period January 31, 2000, to February 21, 2002, and Social Security Income ("SSI") benefits for the period July 26, 2000, to February 21, 2002. Our review focuses not so much on the decision of the district court as on that of the Commissioner, and our task is not to determine *de novo* whether Otts was disabled during the relevant peri- ods but to ensure that the Commissioner's decision was based on the correct legal standard and supported by substantial evidence. *See Halloran v. Barnhart,* 362 F.3d 28, 31 (2d Cir.2004); *Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir.2000). We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision.

1. *The Failure to Find a Listed Impairment*

The record shows that the administrative law judge ("ALJ") who reviewed Otts's disability claim on behalf of the Commissioner did so according to the five-step procedure specified in 20 C.F.R. §§ 404.1520, 416.920; *Rivera v. Schweiker,* 717 F.2d 719, 722 (2d Cir.1983). Otts nevertheless submits that the ALJ erred at step three in concluding that her disability did not constitute a listed impairment, specifically, a disorder of the spine under § 1.04A of Appendix 1. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04A (2001).

Section 1.04A defines a disorder of the spine as, inter alia, a "herniated nucleus pulposus"—*i.e.,* a herniated disk—"resulting in compromise of a nerve root ... or the spinal cord" with "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss." *Id.* It was Otts's burden to demonstrate that her disability met "*all* of the specified medical criteria" of a spinal disorder. *Sullivan v. Zebley,* 493 U.S. 521, 531, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (emphasis in original); *see Rosa v. Callahan,* 168 F.3d 72, 77 (2d Cir.1999) (discuss-

---

1. The Honorable Edward R. Korman, of the United States District Court for the Eastern District of New York, sitting by designation.

ing burdens of proof applicable to five-step analysis). Substantial evidence supports the ALJ's conclusion that, although Otts met the threshold requirement of having a herniated disc, she did not carry her burden as to the other definitional criteria.

█ With regard to "motor loss ... accompanied by sensory or reflex loss," the ALJ noted that an examination conducted on January 31, 2000, the alleged onset date of Otts's disability, showed that Otts's hands were neurovascularly intact and that their "strength was good bilaterally and equal." The ALJ also noted that Dr. Ganesh, who diagnosed Otts with a herniated neck disc in August 2000, found that "[t]here was no muscle atrophy," that "[f]ine motor activity of the hands (dexterity) was intact," and that Otts's "grip strength was 5/5 bilaterally." While plaintiff's treating physician, Dr. Barber, identified some decreased muscle strength, motion, and sensation in Otts's right arm, he made no finding of nerve root compression. In fact, he reported that Otts's disc problem placed no limitations on her sitting, standing, or walking. The ALJ referenced Dr. Ganesh's similar conclusion. As the ALJ acknowledged, a neurosurgeon, Dr. Zogby, conclusorily reported that Otts was "totally disabled from work," but the ALJ acted within his discretion in discounting this view because Dr. Zogby "saw the claimant on only one visit, and based his opinion on her subjective allegations and behavior." *See Balsamo v. Chater,* 142 F.3d 75, 81 (2d Cir.1998) (observing that an ALJ "is free ... to choose between properly submitted medical opinions").

While the ALJ might have been more specific in detailing the reasons for concluding that Otts's condition did not satisfy a listed impairment, the referenced medical evidence, together with the lack of compelling contradictory evidence from the plaintiff, permits us to affirm this part of the challenged judgment. *See Berry v.*

*Schweiker,* 675 F.2d 464, 468 (2d Cir.1982) (holding that "the absence of an express rationale does not prevent us from upholding the ALJ's determination ... [where] portions of the ALJ's decision and the evidence before him indicate that his conclusion was supported by substantial evidence"); *see also Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983).

### 2. *Assessing Residual Functional Capacity at Steps Four and Five*

█ Otts asserts that the ALJ erred in determining, at step four, that she retained the residual functional capacity to perform light exertional work, the level corresponding to her past job as a secretary. Under the regulations, light exertional work "requires a good deal of walking or standing" and "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). The ALJ found that Otts could satisfy these benchmarks despite the report of her long-time treating physician, Dr. Barber, that she could only lift ten pounds and only less than ten pounds frequently due to limitations in the use of her right arm.

While an ALJ may afford controlling weight to the opinion of a treating physician that is supported by record medical findings, *see Rosa v. Callahan,* 168 F.3d at 78–79; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), he may also reject such an opinion upon the identification of good reasons, such as substantial contradictory evidence in the record, *see Halloran v. Barnhart,* 362 F.3d at 32. In this case, the ALJ did not "comprehensively set forth reasons" for rejecting Dr. Barber's opinion about weight limitations on Otts's ability to lift and carry. *Id.* at 33. The omission is significant because "we do not hesitate to remand" a case when the rejection of a

treating physician opinion is not supported by specified reasons. *Id.* In this case, the ALJ observed only that two consulting physicians had concluded that Otts could perform light exertional work, which might liberally be construed as a reference to their finding that she could frequently lift ten pounds. The ALJ did not, however, identify any reasons for finding these opinions more reliable than Dr. Barber's. Indeed, to the extent the ALJ noted that he was not bound by these consulting doctors' opinions and had based his decision on his own independent review of the total record, the ALJ pointed to no other record facts supporting rejection of Dr. Barber's opinion.

We need not, however, remand this case for further proceedings at step four because, even if the step four analysis were to be resolved in plaintiff's favor, we would still have to conclude that substantial record evidence supports the ALJ's conclusion at step five that Otts is not disabled because work exists in significant numbers in the national economy that she can still perform, *e.g.*, information clerk and surveillance system monitor. 20 C.F.R. §§ 404.1560(c), 416.960(c). These jobs were identified by a vocational expert in response to a hypothetical that referenced Otts's exertional and non-exertional limitations, and that specifically assumed both her inability to use her right hand and arm and her inability to lift or carry more than five pounds. Such evidence was sufficient to allow the Commissioner to carry his burden at step five. *See Rosa v. Callahan,* 168 F.3d at 77.

Because this conclusion is, by itself, enough to support affirmance, we need not address Otts's challenge to the IJ's reliance on the Medical–Vocational Guidelines, *see* 20 C.F.R. Pt. 404, Subpt. P, App. 2, or any of her other arguments.

The judgment of the district court is hereby AFFIRMED.