**Earline BADY, Plaintiff,**

**v.**

**Dr. Louis SULLIVAN, Secretary of Health and Human Services, Defendant.**

**No. 87 C 962.**

United States District Court, N.D. Illinois, E.D.

March 10, 1992.

Frederick J. Daley, Frederick J. Daley, Ltd., Chicago, Ill., for plaintiff.

Terry M. Kinney, U.S. Attorney's Office, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

The court has before it two reports and recommendations from Magistrate Judge Rosemond. One recommends that the Plaintiff's claim for widower's insurance benefits be remanded to the Secretary of Health and Human Services. The second recommends denying Plaintiff's attorney's application for fees under the Equal Access to Justice Act ("EAJA"). No objections were filed to the Magistrate Judge's first recommendation remanding the claim for WIB and this court adopts it.

Plaintiff's attorney filed a timely objection to the second recommendation denying an award of EAJA fees. Because the Court agrees with the Magistrate Judge that the government's position was substantially justified, it adopts his recommendation denying EAJA fees.

### Background

In 1985, Plaintiff, Earline Bady, filed applications for three types of benefits under the Social Security Act: disability insurance benefits ("DIB"), widower's insurance benefits ("WIB") and supplemental security income ("SSI"). Her claims were all denied at the administrative level. She sought judicial review in this court under 42 U.S.C. § 405(g).

The court granted an agreed motion dismissing the claim for DIB and remanding the SSI claim to the Secretary of Health and Human Services. That left only the claim for WIB before this court. The claim for WIB was sent to Magistrate Judge Gottschall after the parties had made cross-motions for summary judgment. The issue pertaining to Ms. Bady's claim for WIB is whether or not she was disabled sometime prior to March 31, 1984, seven years from the date when her survivor's benefits ceased. *See* Report and Recommendation of December 14, 1988 at 1–2. In her report and recommendation, Magistrate

Judge Gottschall recommended that plaintiff's motion for summary judgment be denied and that the defendant's motion be granted. Bady did not file an objection.

Meanwhile, on January 5, 1989, an Administrative Law Judge ("ALJ") held a hearing with respect to the remanded claim for SSI. A psychiatrist, Dr. John Adams testified at the hearing as a medical advisor at the request of the ALJ. He testified that the negative side effects of her high blood pressure medication impaired Bady's mental condition to the extent that her mental condition met or equaled Listing 12.02 (dealing with organic mental disorders). *See* Administrative Record ("A.R.") at 272–279. The ALJ disagreed with Dr. Adams' conclusion that she was disabled under Listing 12.02, but nonetheless found that she was disabled "based on the nonexertional limitations caused by the medication, as well as the noted exertional limitation that I think could reasonably be expected from this kind of medication." A.R. at 200.

### Remanding the Claim for WIB

Bady then moved this court to remand the claim for WIB benefits to the Magistrate Judge for reconsideration in light of Dr. Adams' testimony. In her motion to reconsider, Ms. Bady contended that remand was appropriate because new material evidence had come to light and she had good cause for not bringing it at the administrative level. The motion refers to the 1980 Amendment to 42 U.S.C. § 405(g) which permits district courts to remand cases to the Secretary where additional material evidence has come to light and the claimant had good cause for not having introduced it at the administrative level. Plaintiff was apparently relying upon the sixth sentence of 42 U.S.C. § 405(g) even though that sentence only permits "new evidence" remands upon motion of the Secretary made before he files his answer, a point overlooked by the Secretary in its memorandum in opposition to Bady's motion to reconsider. That oversight may not have prejudiced the Secretary, however, as it is presently unclear whether or not dis-

trict courts may order sixth sentence remands in the absence of a motion by the Secretary. *See Sullivan v. Finkelstein,* 496 U.S. 617, 110 S.Ct. 2658, 2665, 110 L.Ed.2d 563 (1990); *Melkonyan v. Sullivan,* — U.S. ——, 111 S.Ct. 2157, 2163, 115 L.Ed.2d 78 (1991); *Caulder v. Bowen,* 791 F.2d 872 (11th Cir.1986) (allowing sentence six remands on motion of the claimant and cited approvingly in *Finkelstein,* 110 S.Ct. at 2664 n. 6); *see also Cummings v. Sullivan,* 950 F.2d 492 (7th Cir.1991) (sentence six remand ordered by district court based on new evidence presented by the claimant).

On February 28, 1989, the court issued an order remanding the cross-motions on the claim for WIB to the Magistrate for further consideration. After reviewing the case and the potential impact of the new evidence, Magistrate Judge Rosemond recommended that Bady's claim for WIB be remanded to the Secretary for further proceedings. The Secretary did not file an objection to Magistrate Judge Rosemond's report and recommendation. This court therefore adopts Magistrate Judge Rosemond's report and recommendation of October 30, 1990, recommending that Ms. Bady's claim for WIB be remanded to the Secretary. *See The Provident Bank v. Manor Steel Corporation,* 882 F.2d 258, 261 (7th Cir.1989). This remand is ordered pursuant to the sixth sentence of 42 U.S.C. § 405(g).

### Claim for EAJA Fees

After the consensual remand on the SSI claim, Ms. Bady prevailed at the administrative level. The ALJ issued a Recommendation dated January 31, 1989, finding Ms. Bady disabled as of April 9, 1985. The Appeals Council on February 21, 1989, issued the final administrative action in this claim and adopted the ALJ's Recommended Decision.

After prevailing on remand, Ms. Bady's attorney, Frederick Daley, applied for an award of attorneys fees and expenses under the Equal Access to Justice Act ("EAJA"). *See* 28 U.S.C. § 2412(d). The EAJA provides in relevant part:

(A) Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action (other than incurred by that party in tort) including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

(B) A party seeking an award of fees and other expenses shall, within thirty days of final judgement in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection....

28 U.S.C. § 2412(d)(1)(A), (B).

#### 1. *The EAJA Application Was Timely*

■ The first question this court must address is the question of whether Daley's application for EAJA fees was timely. This question is a jurisdictional question. *See Damato v. Sullivan,* 945 F.2d 982, 986 (7th Cir.1991) (subject matter jurisdiction of the district court depends on timely filing of application). As quoted above, § 2412(d)(1)(B) requires that the application be made "within thirty days of final judgment in the action." In *Melkonyan v. Sullivan,* — U.S. ——, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), decided after Mr. Daley's application, the Supreme Court ruled that the term "final judgment" referred exclusively to a judgment entered by a district court. In this case, this court never entered a judgment; following remand, the Secretary agreed with Ms. Bady's position. Neither the Secretary nor Ms. Bady had a need to return to the district court for entry of judgment.

■ *Melkonyan* allows for only three types of remands. The requirements for filing a timely EAJA application differ depending on which sort of remand was ordered. Two possible methods of remand

are remands done pursuant to 42 U.S.C. § 405(g) and the third is technically a dismissal under Rule 41(a) Fed.R.Civ.P. followed by a consensual reopening of administrative proceedings. The first type of remand is a remand pursuant to sentence four of § 405(g). A sentence four remand authorizes a court to enter "a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." As this court did not affirm, modify or reverse a decision of the Secretary, the remand was not done pursuant to sentence four.

The second type of remand is one ordered pursuant to sentence six of § 405(g). Under sentence six, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceedings and that evidence might have changed the outcome of the prior proceeding. The sixth sentence also requires a showing of "good cause" for the failure to present the additional evidence in the prior administrative proceeding. The sentence reads:

> The court may, on motion of the Secretary made for good cause shown before he files his answer, remand the case to the Secretary for further action by the Secretary, and it may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Secretary shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm his findings of fact or his decision, or both, and shall file with the court any additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based.

42 U.S.C. § 405(g).

As sentence six states, after the remand, the Secretary *shall* return to the district court, filing the supplemental record and any modification of the prior administrative decision. With respect to filing for EAJA fees in a sentence six case, the Supreme Court has explained that "In sentence six cases, the filing period does not begin until after the postremand proceedings are completed, the Secretary returns to court, the court enters a final judgment, and the appeal period runs." *Melkonyan,* 111 S.Ct. at 2165.

The third type of remand is actually a dismissal under Rule 41(a) Fed.R.Civ.P. followed by a consensual reopening of the administrative proceedings. In *Melkonyan,* the Supreme Court was unsure pursuant to what authority the district court had remanded the claim to the Secretary. The case was remanded to the Ninth Circuit with instructions to remand to the District Court to determine whether the court's remand was a sentence six remand or a dismissal pursuant to Rule 41(a). The Supreme Court declared in *Melkonyan* that if the court's order of remand was really a dismissal under Rule 41(a), then the application for EAJA fees would not have been timely. The Supreme Court wrote:

> [I]f the court's order was, in effect, a dismissal under Fed.Rule Civ.Proc. 41(a), the District Court's jurisdiction over the case would have ended at that point, and petitioner would not have been a prevailing party 'in [a] civil action.' 28 U.S.C. § 2412(d)(1)(A). Under those circumstances, the Secretary would not return to the District Court and petitioner would not be eligible to receive EAJA fees.

*Id.* at 2165.

In this case, the Secretary filed an "Agreed Motion" on September 17, 1987 to *inter alia* remand the SSI claim. The motion stated that "the Secretary would agree to a voluntary remand of that portion of the above-captioned case which pertains to Plaintiff's claim for Supplemental Security Income for further development of vocational evidence, a consultative examination, and receipt of such evidence as proffered by Plaintiff." Agreed Motion ¶ 4. In a minute order dated September 17, 1987, the court granted the motion to remand the SSI claim. Although this court did not "rule explicitly" that the necessary ele-

ments of sentence six were satisfied, *Melkonyan*, 111 S.Ct. at 2164, the parties agreed upon the desirability of a remand for further development of the record. Thus, the court's September 17, 1987 order of remand was done pursuant to sentence six of 42 U.S.C. § 405(g).

▇ In *Melkonyan*, as noted above, the Supreme Court stated that the time period for filing an EAJA application begins to run when the Secretary returns to the district court pursuant to sentence six. The Supreme Court in *Melkonyan* assumed that the Secretary will always return to the district court after which the court will enter a final judgment. When the Secretary winds up agreeing with the claimant after a sentence six "new evidence" remand, there really is no reason for the parties to return to the already clogged docket of a federal district court. Thus, in this case, the Secretary never returned and this court never entered a final judgment. Because *Melkonyan* held that "final judgment" as that term is used in the EAJA refers only to a district court judgment and not to an administrative determination, Ms. Bady's attorney was apparently never afforded the opportunity to file "within thirty days of a final judgment." 28 U.S.C. § 2412(d)(1)(B).

*Melkonyan*, however, did not answer the question of whether a timely EAJA application could be filed *before* the court enters final judgment following a sentence six remand. As the Court's opinion recites:

> At oral argument the parties discussed the timeliness of petitioner's fee application. EAJA requires prevailing parties seeking an award of fees to file with the court *"within thirty days of final judgment in the action,"* an application for fees and other expenses. § 2412(d)(1)(B) (emphasis added). Petitioner claims that this language permits him to apply for fees at any time *up to* 30 days after entry of judgment, and even before judgment is entered, as long a he has achieved prevailing party status.

*Melkonyan*, 111 S.Ct. at 2166 (emphasis original). The Court did not decide whether "within thirty days of final judgment"

might also mean *before* a district court judgment was entered, because the Court was unsure whether the remand in question was truly a sentence six remand or a dismissal pursuant to Rule 41(a). Significantly, the Court did remark that "If petitioner is correct that this was a sentence six remand, the District Court may determine that the application he has already filed is sufficient. Alternatively, petitioner can easily reapply for EAJA fees following the District Court's entry of judgment." *Id.*

This court now faces the question left unanswered in *Melkonyan:* whether an application by a prevailing SSI claimant made following a sentence six "new evidence" remand but before the district court enters a final judgment is timely. The Seventh Circuit recently answered the question in *Cummings v. Sullivan*, 950 F.2d 492, 495 (7th Cir.1991). The court held that an application for EAJA fees by claimant for disability benefits who prevailed at administrative level following a sentence six remand was timely even though made prior to entry of a final judgment. *Id.* at n. 4. Thus, this court has jurisdiction to consider the EAJA petition.

### 2. *The Government's Position Was Substantially Justified*

▇ Having determined that Bady's application for EAJA fees was timely, the court must now determines whether the government's position was "substantially justified" or whether there are "special circumstances that make an award unjust." 28 U.S.C. § 2412(d)(1)(A). Whether the government's initial position denying Ms. Bady's SSI claim was substantially justified is a different question from whether or not she actually was entitled to the benefits. This court should not be overly influenced by the knowledge gained from 20/20 hindsight that the Secretary on remand reversed its position and subsequently found her eligible.

The Seventh Circuit in *Cummings* restated the point that for the government's position to be "substantially justified," it

need only be such as to satisfy a reasonable person. The Court wrote:

> The position of the United States is substantially justified if it is ' "justified in substance or in the main"—that is, justified to a degree that could satisfy a reasonable person.' *Underwood [v. Pierce],* 487 U.S. [552] at 565, 108 S.Ct. [2541] at 2550 [101 L.Ed.2d 490 (1988)].
>
> ... [A] position can be justified even though it is not correct, and we believe it can be substantially (i.e., for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact.

*Id.* at 566 no. 2, 108 S.Ct. at 2550 n. 2. *Cummings v. Sullivan,* 950 F.2d 492 (7th Cir.1991).

In her application for benefits, Bady alleged that she was disabled due to hypertensive vascular disorder. The ALJ held that Bady was not disabled because she did not have a Listed impairment and because she could perform work in the national economy. A.R. at 21. The Appeals Council upheld the ALJ's denial of the SSI claim on the grounds that she did not have a Listed impairment and that she could perform medium work including her former job as a domestic and was therefore not disabled. A.R. at 8–9.

The Magistrate Judge concluded that the Appeals Council's decision was "substantially justified" based on the evidence of record, including Bady's non-compliance with her prescribed treatment regimen and the Appeals Council's and the ALJ's finding that she lacked credibility as a witness. *See* Report and Recommendation at 4; *see also* A.R. at 19, 20 (ALJ's decision) ("Apparently, the claimant's problem is that either she is not very compliant or that the lack of a green card prevented her from getting the medicine;" "The [claimant's] testimony was not credible."); A.R. at 8 (Decision of Appeals Council) ("The claimant's testimony is inconsistent and contradictory and is, therefore, not credible.") The opinions of the ALJ and the Appeals Council point to particular problems with Ms. Bady's demeanor and certain testimonial inconsistencies to explain their not believing her testimony regarding her alleged disability. *See* A.R. at 7, 17–20, 25. The Appeals Council highlighted one example of the holes in her testimony:

> The claimant informed that she can stand for only 15 minutes before her knees give out, and that she can walk only 1½ blocks. She stated that she attended church and participated in the service. Although her grocery store was 2 blocks from her home, the claimant admitted that she could walk to it. She said that she could lift a 5 to 10 pound bag of groceries.... Her testimony regarding her ability to walk is internally contradictory, at one point she testified that 1½ blocks was all that she can walk, but also said that she is capable of walking back and forth to the grocery store, a total distance of 4 blocks.

A.R. at 7. The ALJ also characterized her testimony as "rather vague." A.R. at 18.

The Magistrate Judge also noted that the medical evidence did not clearly demonstrate severe impairment. *See* Report and Recommendation at 4. Although Bady suffered from hypertension, the record evidence also showed that her hypertension could be controlled with medication. *See* A.R. at 7, 143, 164. There was also evidence that Bady suffered osteoarthritis in her knees. A physical examination, however, revealed no abnormal findings other than some crepitus. There was no swelling, tenderness or erythema, and her range of motion was normal. *See* A.R. at 7, 165. It would thus have been reasonable of the Secretary to have denied Ms. Bady's claim on the grounds that she did not meet or equal a Listing and that she did not otherwise have a "severe impairment." As mentioned above, however, the Appeals Council ruled on other grounds—that Bady could return to her former work as a domestic.

The Seventh Circuit recently summarized the five-step inquiry necessary to determine whether or not an individual is disabled. Five questions must be answered: 1) [I]s the claimant presently unemployed; 2) is the claimant's impairment or combination of impairments severe; 3) does the impairment meet or exceed any

of the list of specific impairments (the grid) that the Secretary acknowledges to be so severe as to preclude substantial gainful activity; 4) if the impairment has not been listed by the Secretary as conclusively disabling, is the claimant unable to perform is or her former occupation; and 5) if the claimant cannot perform his past occupation, is the claimant unable to perform other work in the national economy in light of his or her age, education and work experience. A negative conclusion at any step (except for step three) precludes a finding of disability. An affirmative answer at steps one, two or four leads to the next step. An affirmative answer at steps three or five results in a finding of disability.

*Young v. Secretary of Health and Human Services,* 957 F.2d 386, 389 (7th Cir.1992).

The ALJ answered "no" to question five and the Appeals Council, not reaching question five, answered "no" to question four. Questions four and five require an inquiry into the claimant's capability to work, *i.e,* residual functional capacity.

With respect to whether Ms. Bady's residual functional capacity allowed her to return to her former job as a domestic or whether she can perform other work (*i.e.,* questions four and five), the evidence is somewhat mixed. Dr. Gowda, a treating physician, completed a form on August 14, 1985 stating that Ms. Bady was able to lift and carry ten pounds though not more than ten pounds. A.R. at 180. As the Appeals Council noted, however, Dr. Gowda furnished no basis for his conclusion that her physical abilities were so limited. A.R. at 6. Dr. Albert Kwedar, at the Secretary's request, filled out a Residual Functional Capacity Assessment on the very same day which stated his opinion based on the medical record that Ms. Bady was not significantly limited in her physical capacities. A.R. at 174. Ms. Bady's own testimony regarding her physical capacity was reasonably found by the Secretary not to be credible. A.R. at 7, 20. The Appeals Council and the ALJ concluded that, except for the lifting, Ms. Bady could perform most of what is involved in medium work. A.R. at 8, 20. In view of Dr. Kwedar's

report, the lack of a basis for Dr. Gowda's opinion and Ms. Bady's poor credibility, the Secretary's opinion that Bady could perform medium work except for all the required lifting was not unreasonable.

Domestic work is classified as medium work. A.R. at 8. By finding that Bady could not do everything required of medium work, the Appeals Council implicitly found that she could not do everything involved in domestic work. The Appeals Council's denying benefits on the grounds that Bady could work as a domestic is therefore on shaky ground. Because the Appeals Council answered "no" to question four, it did not reach question five—whether Bady could do other work available in the national economy. The ALJ, however, did reach question five and concluded that Bady could perform other work. Ms. Bady had a high school education, she had held jobs before in her life and she possessed the residual functional capacity to perform at least light or sedentary work. Indeed, except for lifting, the Appeals Council reasonably found that she could perform medium work. Based on those reasonable findings, the Appeals Council would have been presented with no material issue as to whether Ms. Bady could adjust to sedentary or light jobs. A.R. at 21. The Appeals Council's reasonable fact-findings would have yielded a negative answer to question five and hence the reasonable conclusion she was not entitled to SSI. Although 20 C.F.R. § 404.1563(d) suggests that some people aged 55–60 unable to perform medium work *may* be deemed disabled unless they have transferrable skills, there is nothing to indicate that Ms. Bady would fall into that category. Indeed, Ms. Bady was held barely unable to perform medium work.

 The EAJA is not an automatic fee-shifting statute. If the government's position was substantially justified, then an award of EAJA fees is not warranted. The Secretary may be substantially justified even when, as in this case, it is ultimately determined that the Secretary was wrong. The fact that the Secretary reversed him-

self as to whether Ms. Bady had the residual functional capacity to work does not compel the conclusion that the earlier determination was unreasonable. That is particularly so because Bady was in an older age category when the ALJ heard the case on remand. A.R. at 201. At the second hearing, she would have been deemed "close to retirement," creating a presumption that she could not adjust to light or sedentary work unless she had "highly marketable" skills. 20 C.F.R. 416.963(d).

■ Bady contends additionally, however, that the Secretary failed to develop the record adequately, a duty imposed by law. Because the Secretary failed his legal duty, Bady argues, the government's position was not substantially justified. The Seventh Circuit has stated that the Secretary has a duty imposed by law to fully and fairly develop the record. "There is no dispute that the Secretary [through the ALJ] has a duty to fully and fairly develop the record, [and that] the goals of the Secretary and the advocates should be the same: that deserving claimants who apply for benefits receive justice." *Ransom v. Bowen*, 844 F.2d 1326, 1330 n. 4 (7th Cir. 1988), quoting *Sears v. Bowen*, 840 F.2d 394, 402 (7th Cir.1988); *see also Cannon v. Harris*, 651 F.2d 513, 519 (7th Cir.1981) ("The ALJ has a basic obligation at such hearings to develop a full and fair record ... and failure to do so has been consistently held to constitute good cause sufficient to remand to the Secretary under 42 U.S.C. § 405(g) for the taking of additional evidence"). The Secretary's own regulations provide as well that "if your medical sources cannot give us sufficient medical evidence about your impairment for use to determine whether you are disabled or blind, we may ask you to take part in physical or mental examinations or tests. We will pay for these examinations." 20 C.F.R. 416.917.

■ The Secretary's duty to develop the record is greatest when the claimant is not represented by counsel. When a claimant is represented at the administrative proceeding, however, the "[ALJ] is entitled to presume that a claimant represented by counsel in the administrative hearings has made his best case." *Sears v. Bowen*, 840 F.2d 394, 402 (7th Cir.1988), quoting *Glenn v. Secretary of Health and Human Services*, 814 F.2d 387, 391 (7th Cir.1987). In this case, Bady was represented by competent counsel. The ALJ was thus entitled to presume that Ms. Bady had presented her best case at the hearing.

Bady was found disabled on remand because of the side effects from medication. A.R. at 8 (ALJ opinion) ("I am finding disability based on the nonexertional limitations caused by the medication as well as the noted exertional limitation that I think could reasonably be expected from this kind of medication"). Bady did not specifically request the Secretary to develop the record on the question of the side effects of her hypertension medicine. She did, however, submit a request stating that "[a] physician designated by the Secretary should examine x-ray evidence and the medical records and opinion [sic] whether claimant's combination of impairments meets or equals a listing." A.R. at 185. This was a specific request, however, for the ALJ to authorize x-rays of Ms. Bady's knees and for a physician's opinion to help determine whether she met a Listing of Impairment, especially 1.03A or 10.10. A.R. at 184–85. Because no loss of motion was found, a medical finding required by Listings 1.03A and 1.03B, the Secretary turned down the request for x-ray testing. A.R. at 7. When the x-rays were ultimately obtained following remand, they revealed only "minimal degenerative changes" of Ms. Bady's knees (A.R. at 352) and they were not the basis for the ultimate ruling of disability.

Bady points out that at the original hearing, Ms. Bady did indeed testify about the effects of her medicine. A.R. at 50, 56, 59. She argues that the Secretary's failure to develop the medical record on the effect of her medicine was in derogation of the Secretary's duty to create a full and fair record. Her testimony, she contends, put the Secretary on notice of the need to ob-

tain medical evidence on how her medicine might be affecting her.

The court disagrees. The Secretary satisfied his duty to develop the record. A hearing was held at which Ms. Bady and a corroborating witness testified before an ALJ. The written record contained over one hundred pages of exhibits, including medical records and the written reports by three treating physicians (Doctors Vincent Sahig, R.S. Dahiya and B.P. Raja Gowda), one doctor who examined Ms. Bady at the Secretary's request (Dr. Richard Gainey) and two physicians who rendered opinions at the Secretary's request (Doctors Albert T. Kwedar and Virgilio R. Pilapil). Furthermore, in view of the ALJ's documented reasons for doubting Ms. Bady's credibility, the ALJ acted reasonably in not hiring a physician to look into her complaint. The court notes that Bady's request for more evidence was dated February 26, 1986, eight days after the hearing at which the ALJ observed her demeanor, heard her inconsistent testimony and evaluated her credibility. Moreover, Bady's request was quite broad and did not direct the ALJ to the possible need to inquire more closely as to the side effects of her medicine. To the extent that Bady's request could be narrowed to particular matters, it was a request that x-rays be taken and that the Secretary consider whether certain Listings were met.

■ Ms. Bady also argues that the Secretary's agreeing voluntarily to remand the SSI claim for "further development of vocational evidence, a consultative examination, and receipt of such evidence as proffered by Plaintiff," see Secretary's "Agreed Motion" of September 17, 1987 ¶ 4, provides objective evidence that the Secretary's initial position at the administrative level was not substantially justified. In support, Bady cites Pierce v. Underwood, 487 U.S. 552, 560, 108 S.Ct. 2541, 2547, 101 L.Ed.2d 490 (1988), in which the Supreme Court agreed with the parties that courts may rely on objective indicia in determining whether or not the government's position was substantially justified.

The Secretary's agreeing to remand the SSI claim was apparently part of a larger partial settlement pursuant to which Ms. Bady agreed to drop her claim for disability insurance benefits. See Agreed Motion. As the Supreme Court cautioned in Pierce v. Underwood, 487 U.S. 552, 568, 108 S.Ct. 2541, 2552, 101 L.Ed.2d 490 (1988), "[t]he unfavorable terms of a settlement agreement, without inquiry into the reasons for settlement, cannot conclusively establish the weakness of the government's position. To hold otherwise would not only distort the truth but penalize and thereby discourage useful settlements." In this case, although the Secretary "lost" by agreeing to remand the SSI claim, the "settlement" was not wholly unfavorable to the government as the Secretary "won" an agreement from Ms. Bady to drop her claim for DIB. The court is therefore reluctant to view the Secretary's voluntary remand of the SSI claim as strong objective evidence that the government's position was feeble.

In addition, as discussed above, the Secretary in this case did not violate his duty to develop the record adequately. Bady never requested development of the issue of side effects and the ALJ was entitled to presume that Bady had made her best case. The decision to remand voluntarily to obtain additional evidence should therefore not be construed as controlling evidence that the government's former position was unreasonable.

### Conclusion

The court adopts the Magistrate Judge's report and recommendation to remand Plaintiff's claim for widower's insurance benefits. The court also adopts the Magistrate Judge's report and recommendation recommending the denial of EAJA attorneys fees.