Rafael TORRES, Plaintiff,

v.

Donna E. SHALALA, Secretary of Health and Human Services, Defendant.

No. 94 Civ. 0562 (JES).

United States District Court,
S.D. New York.

Sept. 9, 1996.

Mary Jo White, United States Attorney for the Southern District of New York, New York City (Linda A. Riffkin, Assistant United States Attorney, of counsel), for Defendant.

MYF Legal Services, Inc., New York City (Wayne G. Hawley, Jill Ann Boskey, of counsel), for Plaintiff.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Pursuant to Title 42 U.S.C. §§ 405(g) and 1383(c)(3), plaintiff Rafael Torres brings the instant action challenging the decision of defendant Secretary of Health and Human Services ("the Secretary") denying his application for Supplemental Security Income ("SSI") disability benefits. Pursuant to Federal Rule of Civil Procedure 12(c), defendant moves to remand for further consideration at the administrative level. Pursuant to Federal Rule of Civil Procedure 12(c), plaintiff cross-moves for reversal of the Secretary's decision or, in the alternative, for remand.

### BACKGROUND

In 1972, plaintiff Raphael Torres suffered a spinal injury while working on an assembly line in a New York factory. Complaint ("Compl.") ¶ 8. As a result of this injury, Torres stopped working in 1972. *Id.* Since then, Torres has not worked and has collected Workers' Compensation benefits. *Id.* Torres, who was born in 1945 and raised in Puerto Rico, received an education equivalent to the sixth grade in Puerto Rico, is only marginally literate in his native language of Spanish and has "little to no ability" to speak or understand English. Transcript of Administrative Hearing dated February 24, 1994 ("Tr.") at 23.[1]

On ten occasions between October 1989 and April 1991, Torres sought treatment from physicians on call at the Bellevue Hospital Center ("Bellevue") for lower back pain syndrome and lower extremity radiculopathy. Tr. at 100–13. On October 24, 1989, physical examination revealed positive paraspinal muscle spasm of the lumbar region with mild to moderate tenderness on palpation. *Id.* at 113. Diagnostic radiology indicated degener-

ative joint disease of the lumbar discs and herniation in the spine between the fourth and fifth lumbar vertebrae. *Id.* However, Torres's neuromuscular formation was normal. *Id.* Bellevue physicians concluded that Torres's lower back pain syndrome developed as a result of a fall in 1972 and recommended Tylenol, Indocin, and Motrin. *Id.* at 113. On March 6, 1990, musculoskeletal examination was negative for previously indicated muscle spasm of lumbar region. *Id.* at 110. Thereafter, physicians at Bellevue characterized Torres's back condition as "stable." Compl., Ex. A at 2.

On June 11 and 14, 1990, Bellevue physicians examined Torres for right upper-quadrant and abdominal pain described as a nonspecific "bowel/gas pattern." Compl., Ex. A at 2. Upon deep palpation of the abdomen, Torres was non-tender. Tr. at 109. An upper gastrointestinal series revealed a duodenal ulcer secondary to Torres's use of anti-inflammatory medication to alleviate his lower back pain. *Id.* at 106. Bellevue physicians recommended conservative treatment of Zantac and Bentyl to relieve Torres's discomfort. *Id.* at 109. Thereafter, Torres was described as "doing well" with regard to his ulcer. *Id.* at 107.

On July 31, 1990, Dr. Rafael Perez–Mesa, a private-practitioner, examined Torres for "colic-like" abdominal pain. Compl., Ex. A at 3. Although Dr. Perez–Mesa characterized Torres's gastrointestinal treatment at Bellevue as one for pancreatis, he made no independent findings of pancreatis. *Id.*

On January 15, 1991, Dr. E.B. Balinberg, a consultative physician at the Bellevue rehabilitation clinic, examined Torres. Compl., Ex. A at 3. Dr. Balinberg found Torres to be well-developed, alert, oriented and cooperative. Tr. at 117–18. Torres displayed a good sense of relevance and was a reliable historian. *Id.* at 118. Examination of the abdomen, extremities, and heart revealed no abnormalities or atrophy. *Id.* Dr. Balinberg observed that Torres had a limited range of motion in his lumbar spine, causing difficulty

---

1. The Secretary did not file an answer in the instant action but did file a copy of the administrative record. Both parties refer to the administrative record in their memoranda. Therefore, the Court construes the complaint to incorporate the administrative record by reference for the purposes of the instant motion.

or discomfort when bending, sitting, squatting, and rising from a seated or reclined position. *Id.* at 119. Dr. Balinberg also reported paraspinal muscular contracture but normal bone architecture and alignment and no demonstrable fracture. *Id.* Based upon these clinical findings as well as diagnostic radiology revealing localized chronic disc derangement, Dr. Balinberg concluded that Torres suffered from a lower back disorder with possible nerve entrapment. *Id.* at 120. In April 1991, two other Bellevue physicians examined Torres and reported similarly restricted physical movements, including difficulty getting up from the examining table and positive straight leg raises on the right at sixty degrees and on the left at forty-five degrees. Tr. at 207.

On March 19, 1991, consultative psychiatrist Richard King assessed Torres's mental and emotional state at the Secretary's request and issued a report in relation thereto ("the King report"). Compl., Ex. A at 3. Dr. King found Torres to be coherent and relevant without a thought disorder. Tr. at 132. Torres informed Dr. King that in 1983 he had been hospitalized for psychiatric problems, including "weeping spells" and insomnia. Compl., Ex. A at 3. Torres also reported feeling anxious and depressed and hearing voices calling his name. *Id.* Dr. King also noted a history of substance abuse ending six years previously. *Id.* at 132. Upon mental status examination, Torres displayed an "average level" of intellectual functioning, an "adequate" ability to reproduce geometric shapes, and a "grossly intact" memory. *Id.* Torres's sensorium was clear, and he was oriented to time, place and person. *Id.* Dr. King reported that Torres watched television, performed routine household chores, including shopping during the day and managing his own financial affairs. *Id.* at 132–33. With regard to emotional limitations, Dr. King concluded that Torres had mild to moderate dysthymic disorder

with anxiety and a history of substance abuse. *Id.* at 133. Dr. King gave a "fair" prognosis and recommended further psychiatric counseling. *Id.*

With respect to physical limitations, consultative physician Dr. Cohen determined that Torres retained the capacity to occasionally lift and carry up to twenty pounds and to stand and/or walk for a total of six hours in an eight hour workday. *Id.* at 148. However, Torres's ability to push and pull controls in the lower extremities was "limited to light work." *Id.*

On August 31, 1990, Torres applied for SSI disability benefits under Title XVI of the Social Security Act, as amended, on the ground that he suffered from a combination of mental and physical impairments which precluded him from working. Compl. ¶ 11. On February 6 and April 8, 1991, the Secretary denied Torres's application initially and upon reconsideration, respectively. Tr. at 88, 94. Specifically, the Secretary concluded that Torres was capable of performing "light work," [2] and was therefore not disabled within the meaning of the Social Security Act.[3] *Id.*

At Torres's request, a *de novo* hearing before administrative law judge ("ALJ") Ashley was held on August 6, 1991. Compl. ¶ 11. At the hearing, Torres, appearing *pro se,* submitted medical reports regarding his lower back and abdominal impairments. Compl., Ex. A at 1–2. In addition, Torres testified that he was unable to perform basic daily activities as a result of his lower back pain. *Id.* at 2. Torres reported that he cannot drive an automobile or launder his own clothes although he cooks for himself and occasionally engages in other household chores. *Id.*

On August 12, 1991, the ALJ denied Torres's application, holding that his residual function capacity, age, education, and prior work experience indicated that Torres was

---

**2.** For the purposes of SSI disability benefits, "light work" involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b).

**3.** The Social Security Act defines "disability" as:

the inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted, or can be expected to last, for a period of not less than 12 consecutive months. Title 42 U.S.C. § 423(d)(1)(A).

not disabled. Compl., Ex. A at 4–5. Relying upon Dr. King's characterization of his "mild to moderate" psychiatric incapacity, the ALJ found that Torres had "no significant nonexertional ailments." Id. at 5. As a result, the ALJ concluded that Torres was capable of performing at a minimum light work, discounted "only by his mild depression." Id. at 5.

On February 3, 1992, Torres requested a review of the decision denying his claim for SSI disability benefits. Compl., Ex. B at 1. On July 10, 1992, the Appeals Council granted the request for review and remanded the action for further consideration. Compl. ¶ 20–22.

On September 30, 1992, ALJ Greenberg conducted a second hearing at which Torres was not present.[4] Compl. ¶¶ 20–22. At that hearing, counsel for Torres presented a report issued by M. Malinowska, Ph.D., a psychologist, and Roman Pabis, Ph.D., a neuropsychologist, at St. Mark's Place Institute for Mental Health ("the St. Mark's report"). Compl., Ex. E at 1. According to that report, Torres underwent psychological testing at St. Mark's on at least two occasions during April and May of 1992. Id. On the Wechsler Adult Intelligence Scale–Revised, Torres obtained a Full–Scale I.Q. of 59, a Verbal I.Q. of 64, and a Performance I.Q. of 61, establishing Torres's intellectual functioning as "mildly retarded." Tr. at 176. Moreover, further testing indicated "seriously impaired" visual-motor perception and psychomotor speed. Id. at 177. Based on the resulting configuration of symptoms, Drs. Malinowska and Pabis diagnosed Torres with polysubstance abuse in remission and "Organic Mental Disorder," causing "marked[ly]" restricted social functioning, the inability to function in work settings, and concentration deficiencies. Id. at 180. In addition, the report classified Torres's pace, abilities to "assume increased mental demands associated with competitive work" and to complete tasks in a timely manner as "extremely" limited. Id. at 178–79. As a result, the report concluded that Torres was "not able to maintain employment." Id. at 18.

On December 15, 1992, the ALJ denied Torres's application, holding that although the medical evidence demonstrated severe back problems and an ulcer, the record did not establish sufficient physical impairment to constitute a disability. Compl., Ex. F at 4–5. While affording credibility to Torres's complaints of lower back and abdominal pains, the ALJ found Torres to be capable of performing "sedentary" work in light of his age, education, and prior work experience.[5] Id. at 7. The ALJ also determined that Torres was not severely mentally impaired. Compl., Ex. F at 4. In making this determination, the ALJ refused to consider the St. Mark's report. Id. Citing Appeals Council policy, the ALJ reasoned that "new and additional evidence could only be considered on this remand if it related to the period on or before" the initial hearing on August 6, 1991. Id. Since the St. Mark's report was based upon treatment impressions from a period following the initial hearing, the ALJ limited his consideration of Torres's mental impairments to the King report. Id. Based upon the King report, the ALJ found that Torres's mild to moderate psychiatric condition does not significantly limit his nonexertional capacities and therefore Torres possessed the intellectual competence to engage in light work.[6] Id.

On May 3, 1993, the Appeals Council granted Torres's request for review of the second hearing and remanded the action with directions, inter alia, to consider the St. Mark's report. Compl., Ex. I at 1. On September 23, 1993, ALJ Greenberg denied Torres's application for SSI disability benefits, holding that Torres was not disabled in light of his residual function capacity, age,

---

4. Torres was unable to attend the hearing because he was in Puerto Rico tending to an ailing relative. Compl. ¶ 20.

5. For the purposes of the Social Security Act, "sedentary work" involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 416.967(a).

6. The Appeals Council later remanded the action on the ground that, inter alia, the ALJ failed to clarify whether Torres was limited to sedentary or light work.

education, and prior work experience.[7] Compl., Ex. K at 9, 10. The ALJ found that Torres demonstrated medically "severe" physical impairments of the lower back and abdomen but he failed to establish a "severe" mental impairment.[8] *Id.* at 6–7, 9, 10. To the extent that the record established Torres's inability to engage in "bending, or *prolonged,* continuous, standing or walking," the ALJ concluded that Torres was limited by temporary exacerbation of his spinal condition. *Id.* at 9 (emphasis original). Furthermore, the Secretary had demonstrated that Torres was able to perform a significant number of jobs despite his limited education and rudimentary English language skills. *Id.* at 10. Therefore, Torres possessed the exertional capacity to engage in a full range of light work, undiminished by any intellectual limitations. *Id.* at 3. On December 2, 1993, the Appeals Council declined Torres's third request for review, establishing the September 23, 1993 decision as the final agency decision. Compl. ¶ 30.

On January 31, 1994, Torres filed the instant action alleging that the Secretary improperly denied his application for disability benefits. Compl. ¶ 1. Without filing an answer, the Secretary moves to remand pursuant to sentence four of Title 42 U.S.C. § 405(g) to correct certain "legal deficiencies" relating to the ALJ's finding that Torres's mental disability is not "severe." Defendant's Memorandum of Law ("Def.'s Mem.") at 8, 10. Specifically, the Secretary concedes that the ALJ should have considered the "severe" mental impairment established by the St. Mark's report when evaluating Torres's capacity to maintain employment. *Id.* Pursuant to Federal Rule of Civil Procedure 12(c), Torres cross-moves for judgment on the pleadings reversing the Secretary's decision, alleging that it was contrary to law and unsupported by substantial evidence. Compl. ¶ 8. Torres argues that the evidence of his physical impairments alone conclusively establishes his inability to perform light work. In the alternative, Torres seeks remand pursuant to sentence six of Title 42 U.S.C. § 405(g) for a *de novo* hearing to fully consider the impact of Torres's severe mental impairment. *Id.* at 8–9.

## DISCUSSION

The standards governing review of a final decision of the Secretary denying disability benefits are well-established, and therefore set forth briefly below. Pursuant to Title 42 U.S.C. § 405(g), in order to overturn a final decision denying disability benefits, Torres must establish either that the Secretary committed legal error or that the decision is not supported by substantial evidence on the record. *See Johnson v. Bowen,* 817 F.2d 983, 985 (2d Cir.1987); *Mimms v. Heckler,* 750 F.2d 180, 185 (2d Cir.1984); *Mongeur v. Heckler,* 722 F.2d 1033, 1038 (2d Cir.1983). To establish eligibility, Torres must show that he is unable to engage in past relevant work as a result of a medically determinable physical or mental impairment. Title 42 U.S.C. § 423(d)(5); *see also Johnson,* 817 F.2d at 986; *Aubeuf v. Schweiker,* 649 F.2d 107, 111–112 (2d Cir.1981); *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir.1980); *Gold v. Secretary of Health Education and Welfare,* 463 F.2d 38, 40 (2d Cir.1972). Once the claimant establishes that his severe impairment precludes his ability to return to his previous occupation, the burden shifts to the Secretary to demonstrate that the claimant, considering his age, education and work experience, retains the functional capacity to perform alternative gainful work which exists in the national economy. *See, e.g., White v. Secretary of Health and Human Services,* 910 F.2d 64, 65 (2d Cir.1990); *Bowen v. City of New York,* 476 U.S. 467, 470, 106 S.Ct. 2022, 2024–25, 90 L.Ed.2d 462 (1986); *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982).

---

**7.** Following the third and final remand, the ALJ did not conduct a hearing since Torres had not returned from Puerto Rico. Compl. ¶ 27. As a result, the ALJ based his decision upon the pre-existing record. *Id.* at 28.

**8.** To be "severe" an impairment must impose more than a minimal restriction on a person's ability to engage in basic work activities. 20 C.F.R. § 416.920(c); Social Security Ruling 88–3c.

■ In this case, the ALJ found that Torres suffered from a severe physical impairment but not a severe mental impairment which, considered together, restricted Torres to no more than light work. Torres claims he is entitled to reversal of the Secretary's decision and the immediate entry of judgment finding him disabled as a matter of law because the record conclusively establishes his inability to do light work.[9] A plaintiff seeking to overturn the Secretary's decision must establish that there is no "substantial evidence" on the record supporting the Secretary's determination. *See* 42 U.S.C. § 405(g); *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938)); *Rutherford v. Schweiker,* 685 F.2d 60, 62 (2d Cir.1982), *cert. denied,* 459 U.S. 1212, 103 S.Ct. 1207, 75 L.Ed.2d 447 (1983). A district court may not substitute its own judgment for that of the Secretary, even if it might have reached a different result upon a *de novo* review. *See Valente v. Secretary of Health and Human Services,* 733 F.2d 1037, 1041 (2d Cir.1984); *Mongeur,* 722 F.2d at 1038; *Bastien v. Califano,* 572 F.2d 908, 912 (2d Cir.1978).

■ However, the Secretary's determination that Torres's physical impairments enable him to perform the full range of light work is clearly supported by substantial evidence in the form of medical records and testimony. The record establishes that Torres's lower back symptoms worsened for two or three months in early 1991 and thereafter improved with conservative treatment. Tr. at 117–20. On January 15, 1991, Dr. Balinberg's examination of Torres's lower back revealed no significant neurological abnormalities or atrophy. *Id.* at 117–20. Torres's hips, ankles and knees exhibited normal ranges of motion and there was no radiological evidence of spinal fracture, osteoporosis or scoliosis. *Id.* Torres also had no upper back or arm impediments to restrict lifting. *Id.* Several months later, Bellevue physicians reported that Torres' back condition was "stable" after treating him conservatively with Tylenol and Motrin. *Id.* at 101. On March 19, 1990, Dr. King concluded that Torres retained the functional capacity to lift up to 20 pounds and stand or walk for six hours in an eight hour work day and was therefore able to perform light work. *Id.* at 148. Significantly, no physician at Bellevue suggested that Torres be confined to bed rest, utilize an assistive walking device or undergo intensive, prolonged treatment. Indeed, Torres himself testified that he was able to perform the routine activities of living such as shopping, riding the bus and walking three blocks to visit his sister. *Id.* at 158. Torres's gastrointestinal condition was last described, in mid–1990, as a nonobstructive gas pattern with no significant abnormalities. *Id.* at 102. It follows that Torres's request for reversal of the Secretary's decision and entry of judgment of disability based upon the evidence of physical impairments alone must be denied.

■ The request for entry of judgment on the ground that Torres's severe mental impairments render him disabled as a matter of law is likewise unavailing. The Secretary concedes that the ALJ's finding that Torres's mental impairment was not severe was erroneous as a matter of law and seeks remand pursuant to sentence four of § 405(g) for reconsideration of whether Torres can perform light work.[10] Because the record contains sufficient evidence to provide a rational inference that Torres's severe mental impairments do not preclude him from performing light work, the ALJ must first be afforded the opportunity to make that determination. *See Parker,* 626 F.2d at 235; *Caceres v. Shalala,* No. 93–7444, 1995 WL 20312 (S.D.N.Y. Jan. 19, 1995); *Johnson,* 817 F.2d at 986–987. Although the St. Mark's report concludes that Torres cannot work, the King

---

9. The Secretary does not dispute that based upon Torres's limited education and linguistic skills, lack of transferable skills and age, he entitled to disability benefits if he is restricted to sedentary work. *See* 20 C.F.R. Pt. 404, Subpt. P. § 201.09.

10. Sentence four provides that:

The Court shall have the power to enter upon, the pleadings and a transcript of the record, a judgment affirming, modifying or reversing the decision of the Secretary, with or without remanding the cause for a hearing.

42 U.S.C. § 405(g).

report does not by itself suggest that Torres's mental disorder precludes him from engaging in light work. Dr. King found plaintiff to be cooperative and to speak in a relevant and coherent manner. Tr. at 132. Dr. King opined that Torres's intellectual function was on an average level given that he adequately reproduced geometric shapes and managed his own financial affairs. *Id.* at 132–33. Although the St. Mark's report describes an individual who is mildly retarded, has impaired motor skills and is incapable of functioning in a work setting, Tr. at 180, despite years of treatment at Bellevue, none of the hospital records contains references to any mental impairments.

Dr. Mesa, who examined Torres on three occasions in 1990, found no evidence of a significant psychiatric disorder. Tr. at 115. Indeed, Dr. Balinberg did not observe significant mental impairment during his consultative physical examination of Torres. *Id.* at 117–119. It follows that the effect of Torres's severe mental impairment upon his ability to engage in light work must be considered initially at the administrative level, and therefore Torres's application for reversal pursuant to sentence four must be rejected. *See Rivera v. Sullivan,* 771 F.Supp. 1339, 1359 (S.D.N.Y.1991) (citing *Johnson,* 817 F.2d at 987; *Parker,* 626 F.2d at 235).

For the same reasons that Torres is not entitled to immediate entry of judgment in his favor, the Secretary is likewise not entitled to remand under sentence four. The remand provision of sentence four contemplates entry of final judgment determining disability followed by remand merely for the calculation of benefits. *See Gold,* 463 F.2d at 44; *Gilliland v. Heckler,* 786 F.2d 178, 184 (3rd Cir.1986). The Secretary is not entitled

remand where such a remand is inconsistent with her contention that Torres is not disabled as a matter of law.

Nor would the Secretary's desire to avoid legal fees with a sentence four remand justify the Secretary's inconsistent position in that regard.[11] This is especially true because the plain language of sentence four providing for entry of judgment "upon the pleadings" precludes its application where, as here, the Secretary has made a pre-answer motion. Title 42 U.S.C. § 405(g) (emphasis added); *see also Mijares v. Secretary of Health and Human Services,* 887 F.Supp. 57, 59 (E.D.N.Y.1994); *Younger v. Shalala,* No. 93–2623, 1995 WL 447794, at *1 (S.D.N.Y. July 20, 1994); *Correa v. Sullivan,* No. 92–0408, 1992 WL 367116, at *2 (S.D.N.Y. Nov. 24, 1992); *Tucunango v. Sullivan,* 810 F.Supp. 103, 105 (S.D.N.Y.1993); *Fernandez v. Sullivan,* 809 F.Supp. 226, 228–29 (S.D.N.Y.1992); *Martinez v. Sullivan,* No. 91–2247, 1991 WL 474797, at *1 (S.D.N.Y. Nov. 8, 1991).

In contrast, the language of sentence six is specifically tailored to govern a motion to remand made by the Secretary "for good cause shown before he files his answer." 42 U.S.C. § 405(g).[12] *Melkonyan v. Sullivan,* 501 U.S. 89 at 100 n. 2, 111 S.Ct. 2157 at 2164 n. 2, 115 L.Ed.2d 78 (1991) (sentence six "authorize[s] the District Court to remand on motion by the Secretary made before the Secretary has filed a response in the action."); *Mijares,* 887 F.Supp. at 59; *Fernandez,* 809 F.Supp. at 228; *Correa,* 1992 WL 367116 at *1.

Here, the Secretary has moved to remand prior to filing an answer and has demonstrated good cause by acknowledging legal error. *See Cummings v. Sullivan,* 950 F.2d 492,

---

11. Unlike a sentence four remand, a sentence six remand permits the district court to retain jurisdiction over the proceeding pending agency determination in order to ensure proper disposition of the case. *See Sullivan v. Hudson,* 490 U.S. 877 at 886, 109 S.Ct. 2248 at 2255, 104 L.Ed.2d 941 (1989). As a result, under a sentence six remand, a claimant who has been represented by counsel at the administrative level and on appeal may be eligible for reimbursement by the Secretary for attorney's fees incurred at the administrative hearings under the Equal Access to Justice Act, 42 U.S.C. § 2412(d)(1)(A) ("EAJA"). *Id.*

12. Sentence six then in effect provides in part:

> The court may, on motion by the Secretary filed for good cause shown before he files his answer, remand the case to the Secretary for further action by the Secretary, and it may at any time order additional evidence to be taken by the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence from the record in a prior proceeding....

42 U.S.C. § 405(g).

499–500 (7th Cir.1991) ("error in refusing to consider [emotional impairments] certainly constitutes good cause"); *Younger,* 1995 WL 447794, at *1; *Seaborn v. Sullivan,* 822 F.Supp. 121, 123 (S.D.N.Y.1993); *Tucunango,* 810 F.Supp. at 104 (remanding under sentence six where Secretary admits committing legal error); *Correa,* 1992 WL 367116 at *2 (same); *Fernandez,* 809 F.Supp. at 228 (misapplication of treating physician rule constitutes good cause for sentence six remand); *Savell v. Sullivan,* 1992 WL 363702 at *1 (S.D.Ala. Aug. 14, 1992) (" '[g]ood cause shown' has been defined to include a determination that the Secretary's decision is unsupported by substantial evidence"); *Bady v. Sullivan,* 787 F.Supp. 809, 817 (N.D.Ill.1992) (failure to develop full and fair record "has been consistently held to constitute good cause"); *Rivera Sanchez v. Secretary of Health and Human Services,* 786 F.Supp. 147, 149 (D.P.R.1992) (need to further develop evidence of injury constitutes good cause).

A sentence six remand is especially appropriate given that Congress enacted a statutory scheme under sentence six whereby the Secretary has the opportunity to reconsider a decision denying benefits without having to defend her decision by answering the complaint. *See* 42 U.S.C. 405(g); *see also, Seaborn,* 822 F.Supp. at 125. However, Congress conditioned that opportunity upon the claimant's ability to return to the district court to resolve disputes or seek interim relief. *Id.*

### CONCLUSION

For the reasons set forth above, the above-captioned action is remanded to the Secretary under 42 U.S.C. 405(g) sentence six, and the Court retains jurisdiction over the instant action to review the final decision of the Secretary following remand. *See Sullivan v. Hudson,* 490 U.S. 877, 885, 109 S.Ct. 2248, 2254, 104 L.Ed.2d 941 (1989). Accordingly, the above-captioned action shall be and hereby is placed on the suspense calendar pending the outcome of the proceedings at the administrative level.